In the Matter of INCOME TAX PROTEST OF FLINT RESOURCES.

FLINT RESOURCES COMPANY, Appellant,

v.

STATE of Oklahoma, ex rel. OKLAHOMA TAX COMMISSION, Appellee.

No. 70024.

Supreme Court of Oklahoma.

Jan. 17, 1989.

Rehearing Denied Sept. 20, 1989.

Henry G. Will, Martin R. Wing and Laurie A. Patterson, Tulsa, for appellant.

Joe Mark Elkouri, Gen. Counsel, and Kris D. Kasper, Asst. Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, for appellee.

Thomas G. Potts and Marc F. Conley, Tulsa, for amicus curiae.

KAUGER, Justice.

Three questions involving state income tax are presented on appeal: 1) Whether Oklahoma may include "gross up," as taxable income;[1] 2) Whether a corporation,

---

1. "Gross up" is an accounting device created by the federal tax system. "Gross up" is added to a corporation's federal income so that it may claim a foreign tax credit on its federal return. It grants corporations credit against federal income tax liability for foreign taxes deemed paid to foreign governments by their foreign subsidiaries from accumulated profits. See, *In re Goodyear Tire & Rubber Co.,* 133 Vt. 132, 335 A.2d 310, 312–13 (1975). "Gross up" is based on

which has elected to treat payments of foreign income taxes as a credit for federal tax purposes, may deduct such payments from its taxable income under the Oklahoma Income Tax Act, 68 O.S.1981 § 2351, et seq. (Act); and 3) Whether interest should be remitted.

We find: (1) Because the companies were not engaged in a unitary business, taxation of the federal "gross up" violated due process. The "gross up" deduction is within the purview of 68 O.S.1981 § 2358(A)(2),[2] which allows a deduction for any amount exempted from taxation on constitutional grounds. (2) There is no constitutional prohibition against including foreign taxes in Oklahoma taxable income and no provision for deduction of foreign taxes within the Act. Corporations choosing to take the federal foreign tax credit, rather than a deduction for foreign taxes paid, must include the amount representing foreign taxes within Oklahoma taxable income. (3) The inclusion of foreign taxes in Oklahoma taxable income has been foreshadowed by case law. The Oklahoma Income Tax Act does not provide for the deduction. The requested remittur of interest is disallowed insofar as the deduction for foreign taxes is concerned. Because tax on the foreign "gross up" was unconstitutional, the interest and the additional assessment of the gross-up amount must be remitted.

## STIPULATED FACTS

The parties stipulated to the following facts: The appellant, Flint Resources Company is an Oklahoma corporation domiciled in Oklahoma. Flint Construction Company

of South America (South America) is a wholly owned subsidiary of Flint Resources Company. Flint Construction (Construction), a wholly owned subsidiary of South America, was organized under the laws of Venezuela, and domiciled in Venezuela. In 1980 and 1981, Flint Resources was primarily a holding company owning 100% of the stock of South America. During that time, South America was also primarily a holding company owning 100% of the stock of Construction. The only relationship between Construction and South America was that of parent-subsidiary. Construction did not conduct business or perform services in Oklahoma. During the years 1980 and 1981, the activities of South America and Construction did not constitute a unitary business.

Flint Resources, South America, and Kelley Ranch Trust filed consolidated tax returns for the years 1980 and 1981. Construction paid Venezuelan income taxes of $3,792,954 in 1980 and $3,837,961 in 1981. Construction paid dividends of $500,000 and $275,000 to South America during 1980 and 1981. Income taxes were withheld, which were paid to Venezuela in the amounts of $100,000 in 1980 and $55,000 in 1981.

The tax returns for the tax years 1980 and 1981, reflect that Flint Resources elected to take the foreign tax credit for the amount of Construction's Venezuelan taxes deemed to have been paid by South America as well as for the taxes withheld and paid to Venezuela on the dividends paid to South America. In 1980, Flint Resources' foreign tax credit amounted to $288,822 and in 1981 it totaled $175,885. Because

---

the requirement that corporations include within taxable income an amount equal to the foreign taxes paid. This amount, which is never actually received by a corporation, is deemed to be received in the form of a dividend. This fiction allows a United States corporation to take a credit for taxes paid by its subsidiaries. See, B. Bittker and J. Eustice, "Federal Income Taxation of Corporations and Shareholders," p. 17–36, § 17.11 (4th Ed.1979). See also, Hellerstein, "State Income Taxation of Multijurisdictional Corporations, Part II: Reflections on *Asarco* and *Woolworth*," 81 Mich.L.Rev. 157, 177 (1982). In the Findings, Conclusions and Recommendations of the Administrative Law Judge adopted by the Oklahoma Tax Commission *en*

banc, it was recognized that the gross-up amount was merely a computational device used to implement the deemed-paid foreign tax credit.

2. Title 68 O.S.1981 § 2358(A)(2) provides:

"There shall be deducted amounts included in such income that the state is prohibited from taxing because of the provisions of the Federal Constitution, the State Constitution, federal laws or laws of Oklahoma."

Although section 2358 has been subsequently amended, the language of subsection (A)(2) remains unchanged.

Flint Resources elected to take the foreign tax credit, the corporation was not allowed to deduct the taxes withheld on the dividends paid to South America. Instead, it was required to add a foreign dividend "gross-up" in the amount of $264,533 in 1980, and $190,600 in 1981, as taxable income on its federal returns. Flint Resources reduced the amount of South America's dividend income by the foreign dividend "gross-up" amounts, and it increased its deduction for taxes paid by $100,000 on its 1980 Oklahoma return and by $48,740 on the 1981 Oklahoma return.

On August 3, 1984, the appellee/Oklahoma Tax Commission (Tax Commission) proposed an additional income tax assessment on Flint Resources and its subsidiaries. The assessment was based on a taxable income figure which included the federal foreign dividend "gross-up" amount for the tax years 1980 and 1981. The assessment disallowed deductions for the income taxes withheld by Venezuela on the dividends paid by Construction to South America. The assessment added $14,581 to the amount of Oklahoma taxes owed for 1980 and $9,574 for 1981. Flint Resources paid the assessed taxes under protest including interest. Flint Resources protested the assessment of additional taxes. After a hearing before an administrative law judge, an order was issued recommending denial of the protest. This order, as supplemented, was affirmed by the Oklahoma Tax Commission *en banc*. Flint Resources appealed pursuant to 68 O.S.1981 § 225(a).

## I

### A

TAXATION OF THE FEDERAL "GROSS UP" IS UNCONSTITUTIONAL UNLESS THERE IS A UNITARY RELATIONSHIP BETWEEN AN OKLAHOMA CORPORATION'S FOREIGN SUBSIDIARY AND THE STATE OF OKLAHOMA.

The provisions of the Internal Revenue Code governing foreign tax credits and "gross up" calculations were adopted to relieve taxpayers, within stated limits, of the harsh consequences of double taxation,[3] without eliminating federal tax on income from foreign sources. The federal foreign tax credit scheme also precludes a federal taxpayer, who has paid foreign taxes, from taking both a federal tax credit and a deduction for the same expense.[4] American multinational corporations are offered two options in computing federal income tax: they may either deduct income taxes paid to a foreign government from taxable income under 26 U.S.C. § 164(a)(3) (1981);[5] or they may elect to credit that amount against their tax liability under § 901.[6] Pursuant to § 902[7] corporations

---

3. *American Chicle Co. v. United States,* 316 U.S. 450, 452, 62 S.Ct. 1144–45, 86 L.Ed. 1591, 1594 (1942).

4. *Motors Ins. Co. v. United States,* 530 F.2d 864, 869, 208 Ct.Cl. 571 (1976). See also, *Bogner v. State Dept.,* 107 Idaho 854, 857, 693 P.2d 1056, 1059 (1984).

5. Internal Revenue Code of 1954, 26 U.S.C. § 164 (1981) provides in pertinent part:
   "(a) Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued ...
   (3) State and local, and foreign, income, war profits, and excess profits taxes ..."
   Although this section has been subsequently amended, the quoted provision remains unchanged.

6. The Internal Revenue Code of 1954, 26 U.S.C. § 901 (1981) provides in pertinent part:
   "(a) Allowance of credit.—If the taxpayer chooses to have the benefits of this subpart, the tax imposed by this chapter shall, subject to the limitation of section 904, be credited with the amounts provided in the applicable paragraph of subsection (b) plus, in the case of a corporation, the taxes deemed to have been paid under sections 902 and 960. Such choice for any taxable year may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for such taxable year....
   (b) Amount allowed.—Subject to the limitation of section 904, the following amounts shall be allowed as the credit under subsection (a):
   (1) Citizens and domestic corporations.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; ..."

utilizing the § 901 credit, receiving dividends from foreign subsidiaries, and owning at least 10% of the voting stock of those subsidiaries, are considered to have paid a portion of the foreign taxes actually paid by their foreign subsidiaries.[8] This amount is also treated as a credit against the federal tax due. Section 275 [9] disallows any deduction for foreign taxes paid if a corporation has chosen the §§ 901, 902 benefits and credits. Generally, it is more advantageous for a domestic corporation to take the foreign tax credit. The credit for taxes deemed paid reduces dollar for dollar

the actual federal tax due. The deduction merely reduces taxable income.[10] If a domestic corporation elects to take the tax credits afforded by §§ 901 and 902, under 26 U.S.C. § 78 (1981),[11] the "gross-up," must be included in the corporation's taxable income.

Although the question of state taxation of the federal "gross-up" is one of first impression in Oklahoma, the United States Supreme Court addressed the issue in *F. W. Woolworth · Co. v. Taxation & Revenue Dept.*, 458 U.S. 354, 372–73, 102 S.Ct. 3128, 3139, 73 L.Ed.2d 819, 833 (1982), *reh'g de-*

Although the Act was revised in 1986, the language of this section remains substantially the same.

See also, R. Molloy, *Federal Income Taxation of Corporations*, Ch. 5, p. 138 (Am.Law Inst.1972); H. Lidstone and A. Powers, *Federal Income Taxation of Corporations*, Ch. 7, p. 167–68 (Am.Law Inst. 5th Ed.1980).

7. The Income Tax Act of 1954, 26 U.S.C. § 902(a) (1981) provides:

"(a) Treatment of taxes paid by foreign corporation.—For purposes of this subpart, a domestic corporation which owns at least 10 percent of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of any income, war profits, or excess profits taxes paid or deemed to be paid by such foreign corporation to any foreign country or to any possession of the United States, on or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends (determined without regard to section 78) bears to the amount of such accumulated profits in excess of such income, war profits, and excess profits taxes (other than those deemed paid)."

Section 902(a) of the 1986 Act adds language clarifying that the "gross-up" credit is available to a parent corporation which owns 10% or more of the voting stock of a foreign corporation and substitutes the foreign corporation's post–1986 undistributed earnings as the figure used to make the calculation in the place of the "accumulated profits in excess of such income, war profits, and excess profits taxes" found in the 1954 version.

The following is an example of how the calculation works under § 902: If a foreign subsidiary of a United States parent corporation earns $100, pays foreign taxes of $40, and pays a dividend of $30 out of its after-tax profits of $60, the deemed paid foreign tax credit of the parent corporation is $30/60 × $40, or $20. The parent includes $50 in dividend income (the actual dividend of $30 plus the $20 gross-up amount)

and claims a foreign tax credit of $20 against its federal income tax. See, *F. W. Woolworth Co. v. Taxation & Revenue Dept.*, 458 U.S. 354, 358, 102 S.Ct. 3128, 3132, 73 L.Ed.2d 819, 833 (1982), *reh'g denied*, 459 U.S. 961, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982).

8. See, H. Lidstone and A. Powers, note 6 at 172, supra and R. Molloy, note 6 at 141, supra.

9. Internal Revenue Code of 1954, 26 U.S.C. § 275 (1981) provides in pertinent part:

"(a) General rule.—No deduction shall be allowed for the following taxes: ...

(4) Income, war profits, and excess profits taxes imposed by the authority of any foreign country or possession of the United States, if the taxpayer chooses to take to any extent the benefits of section 901 (relating to foreign tax credit.) ..."

Under the 1986 Act, these same taxes are nondeductible if the taxpayer chooses to take the benefits of the tax credit under § 901 or the taxes are paid or accrued with respect to foreign trade income.

10. *Int'l Minerals & Chem. Corp. v. Heitkamp*, 417 N.W.2d 791, 794 (N.D.1987). The appellant/Flint Resources Co. chose to take advantage of the foreign tax credit rather than simply taking a deduction for foreign taxes paid.

11. The Internal Revenue Code of 1954, 26 U.S.C. § 78 (1981) provides:

"If a domestic corporation chooses to have the benefits of subpart A of part III of subchapter N (relating to foreign tax credit) for any taxable year, an amount equal to the taxes deemed to be paid by such corporation under section 902(a) (relating to credit for corporate stockholder in foreign corporation) or under section 960(a)(1) (relating to taxes paid by foreign corporation) for such taxable year shall be treated for purposes of this title (other than section 245) as a dividend received by such domestic corporation from the foreign corporation."

Section 78 remains unchanged in the 1986 Act.

*nied,* 459 U.S. 961, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982). The Court held that unless there was a unitary relationship between a corporation's foreign subsidiary and the taxing state, taxation of "gross-up" violated due process. Other courts considering the issue both before and after *Woolworth* have reached varying results.[12] Nevertheless, the determinative factor has been the existence or nonexistence of a unitary relationship between the taxing state and the corporation.[13]

■ Recently, in *Matter of Income Tax Protest of Ashland Exploration, Inc.,* 751 P.2d 1070, 1072 (Okla.1988), we defined unitary business. A business is unitary if it operates in more than one state, and if operations conducted in one state benefit or enhance business activities in one or more other states. These activities must be so interdependent and so mutually beneficial that, in effect, they comprise one integral business. Taxation of the federal "gross up" is constitutional if a unitary relationship exists between the taxing state and the domestic corporation's foreign subsidiary. Otherwise it is unconstitutional because the state has not provided protection, opportunities, or benefits to the corporation for which it can ask for something in return—taxes.[14]

## B

THE FEDERAL "GROSS UP" IS DEDUCTIBLE FROM OKLAHOMA TAXABLE INCOME PURSUANT TO 68 O.S. 1981 § 2358(A)(2).

Title 68 O.S.1981 § 2355(C)[15] imposed a 4% tax on the Oklahoma taxable income of corporations doing business within the state or deriving income from sources within the state.[16] Oklahoma taxable income is defined as "'taxable income' as reported ... to the federal government", subject to federal adjustments.[17]

■ "Gross up" is federal taxable income, properly included in the taxable income of an Oklahoma corporation unless some provision of the Oklahoma Act provides for its deduction. Title 68 O.S.1981 § 2358(A)(2) provides for the deduction of any amount from Oklahoma taxable income which the state is either statutorily or con-

---

**12.** These jurisdictions found that the gross-up amount is not taxable income: *F.W. Woolworth Co. v. Taxation & Revenue Dept.,* see note 7, supra; *Appeal of Knosher,* 139 Vt. 285, 428 A.2d 1104–06 (1981); *Dow Chem. Co. v. Comm'r of Revenue,* 378 Mass. 254, 391 N.E.2d 253, 266 (1979); *Commonwealth v. Emhart Corp.,* 443 Pa. 397, 278 A.2d 916, 921 (1971), appeal dismissed, 404 U.S. 981, 92 S.Ct. 451, 30 L.Ed.2d 364 (1971).
These jurisdictions found that the gross-up amount was taxable because a unitary relationship existed: *Chicago Bridge & Iron Co. v. Caterpillar Tractor Co.,* 463 U.S. 1220, 103 S.Ct. 3562, 77 L.Ed.2d 1402 (1983); *Int'l Minerals & Chem. Corp. v. Heitkamp,* see note 10, supra; *Ex parte Kimberly–Clark Corp.,* 503 So.2d 304, 309 (Ala. 1987); *Caterpillar Tractor Co. v. Lenckos,* 49 Ill.Dec. 329, 342, 84 Ill.2d 102, 417 N.E.2d 1343, 1356 (1981), appeal dismissed sub. nom. 463 U.S. 1220, 103 S.Ct. 3562, 77 L.Ed.2d 1402 (1983); *NCR Corp. v. Comptroller of the Treasury,* 313 Md. 118, 544 A.2d 764, 770 (1988).

**13.** Once again we are faced with deciding an important issue in which the facts have not been developed in an adversarial forum. The parties have stipulated that no unitary business was being conducted between South America and its foreign subsidiary, Construction, and there are no facts in the record to indicate that the stipulation was in error. Had the facts been developed in an adversarial proceeding, the result may have been different.

**14.** *Wisconsin v. J.C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 250, 85 L.Ed. 267, 270–71 (1940). See also, *Goldberg v. Sweet,* — U.S. ——, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989).

**15.** Title 68 O.S.1981 § 2355(C) provides:
"Corporations. A tax is hereby imposed upon the Oklahoma taxable income of every corporation doing business within this state or deriving income from sources within this state in an amount equal to four percent (4%) thereof."

**16.** This section was amended effective July 1, 1985 to provide for a tax of 5% for all taxable years beginning after December 31, 1984.

**17.** Title 68 O.S.1981 § 2353(12) provides:
"'Oklahoma taxable income' means 'taxable income' as reported (or as would have been reported by the taxpayer had a return been filed) to the federal government, and in the event of adjustments thereto by the federal government as finally ascertained under the Internal Revenue Code, adjusted further as hereinafter provided ..."
Although the above section has been amended, this subsection remains unchanged.

stitutionally prohibited from taxing. Because the parties stipulated that Flint Construction Company of South America and Flint Construction, C.A. are not engaged in a unitary business, taxation of the federal "gross up" is unconstitutional. The "gross up" deduction is within the purview of § 2358 which allows a deduction for any amount exempted from taxation on constitutional grounds.

## II

## A

FAILURE TO PROVIDE A STATE DEDUCTION FOR FOREIGN TAXES PAID DOES NOT VIOLATE EITHER THE FEDERAL COMMERCE OR DUE PROCESS CLAUSE AND IS NOT VIOLATIVE OF OKLAHOMA'S UNIFORMITY CLAUSE.

■ When it elected to take the foreign tax credit under 26 U.S.C. § 901 (1981), Flint Resources relinquished its option to deduct from income for federal purposes income taxes paid to foreign governments pursuant to §§ 164(a)(3) and 275(a)(4). Despite its election, Flint Resources now argues that it may deduct from its Oklahoma taxable income, in addition to the federal

"gross up" amount, taxes paid to Venezuela. It asserts that failure to allow a deduction for foreign taxes paid results in double taxation thus violating the federal constitution's commerce and due process clauses and Oklahoma's uniformity clause.[18]

Taxing statutes should be strictly construed against the state with any ambiguity or doubt resolved in favor of the taxpayer.[19] In order for a tax classification to pass constitutional muster, there must be a reasonable classification and reasonable opportunity for uniform or equal incidence upon the class created.[20] Here, the broad classification encompasses corporations either doing business within the state or deriving income from within the state. In the absence of arbitrary distinctions, the Fourteenth Amendment does not prevent double taxation.[21] *Any double taxation arising from Oklahoma's tax of foreign taxes results not from arbitrary state action, but from a voluntary election to claim the foreign tax credit rather than the deduction from federal taxable income for taxes paid.*[22]

Flint Resources, in misplaced reliance upon *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 444, 99 S.Ct. 1813, 1819, 60 L.Ed.2d 336, 345 (1979), alleges that the commerce clause[23] prevents state

18. Okla. Const. art. 10, § 5 provides:
"The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform upon the same class of subjects."

19. *Shwab v. Doyle*, 258 U.S. 529, 536, 42 S.Ct. 391, 393, 66 L.Ed. 747, 753, 26 A.L.R. 1454, 1460 (1922).

20. *Sowders v. Oklahoma Tax Comm'n*, 552 P.2d 698, 700 (Okla.1976).

21. *Shaffer v. Carter*, 252 U.S. 37, 58, 40 S.Ct. 221, 227, 64 L.Ed. 445, 459 (1920); *Oklahoma Tax Comm'n v. Smith*, 610 P.2d 794, 805 (Okla. 1980).

22. Two other state supreme courts have denied deductions for foreign taxes on similar grounds. See *Commonwealth v. Westinghouse Elec. Corp.*, 478 Pa. 164, 386 A.2d 491, 493 (1978), *appeal dismissed* 439 U.S. 805, 99 S.Ct. 61, 58 L.Ed.2d 97 (1978) [there the court stated], "... the sole reason that appellant (taxpayer) paid more taxes than those corporations which were permitted to deduct foreign taxes was that unlike those other corporations, appellant chose to claim the

foreign taxes as a credit ... rather than as a Federal tax deduction from its gross income on its state return. Appellant's election of claiming the foreign taxes as a credit rather than as a deduction on its Federal tax return was voluntary." (Emphasis added.) and *Albany Int'l Corp. v. Halperin*, 388 A.2d 902, 906 (Me.1978) [there the court stated, "The fact that appellant had not, in effect, deducted the amounts paid for foreign taxes from its gross income was the result of its own election under the Internal Revenue Code to take a tax credit rather than a deduction. It was bound by that election under the federal tax law, and we find nothing in the Maine law that can be construed to relieve the corporation of the consequences of its choice for purposes of the state income tax."].

23. The United States Const. Art. I, § 8 provides in pertinent part:
"The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States ..."

taxation of foreign taxes. In *Japan Line,* the issue was taxation of instrumentalities of foreign commerce, not a tax on income. The commerce clause does not negate the reserved powers of taxation held by the states.[24] Absent federal legislation, state courts need not infer that treatment of foreign income at the federal level mandates identical treatment by the states. Imposition of the commerce clause arises only where the tax either implicates foreign policy issues which must be left to the federal government or violates a clear federal directive.[25] There is no indication that a tax which is based on federal taxable income has any impact on foreign policy, and no federal mandate has issued which requires that the tax be excluded from a corporation's income for state tax purposes. No violation of the commerce clause exists.

Flint Resources last constitutional argument concerns the uniformity clause of the Oklahoma constitution.[26] It argues that if a corporation cannot deduct foreign taxes from its state tax return, it is taxed at a higher rate than those corporations which do not take the foreign tax credit and deduct the foreign taxes on their federal returns. Oklahoma's uniformity clause applies to *property* taxes only.[27] This case raises questions solely regarding corporate

*income* tax, not the direct taxation of property. Hence, Oklahoma's uniformity clause is not pertinent to this case, and Flint Resources' argument on this point has no merit.

## B

CORPORATIONS ELECTING TO TREAT PAYMENT OF FOREIGN INCOME TAXES AS A TAX CREDIT FOR FEDERAL TAX PURPOSES MAY NOT CLAIM THOSE PAYMENTS AS A DEDUCTION FROM OKLAHOMA TAXABLE INCOME.

■ There is no constitutional impediment to taxation of the amount included in Oklahoma taxable income as foreign taxes. Flint Resources acknowledges that the Oklahoma Income Tax Act does not provide for the deduction of foreign taxes. Nevertheless, it contends that because the dividend amount initiating the foreign taxes is included in Oklahoma taxable income, 68 O.S.1981 § 2358(A)(4)(b),[28] is applicable. This statute permits an "allowable deduction attributable" to the dividend received Flint Resources asserts that a taxpayer may take the allowable federal deduction even if the taxpayer has taken the foreign tax credit on its federal return. It argues that use of the word "allowable" rather than "allowed" means that permissible federal deductions will be subtracted from

To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes ..."

**24.** *Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 329–30, 97 S.Ct. 599, 606, 50 L.Ed.2d 514, 523–24 (1977).

**25.** *Container Corp. v. Franchise Tax Bd.,* 463 U.S. 159, 193–94, 103 S.Ct. 2933, 2955, 77 L.Ed.2d 545, 571 (1983), *reh'g denied,* 464 U.S. 909, 104 S.Ct. 265, 78 L.Ed.2d 248 (1983); *Mobil Oil Corp. v. Comm'r of Taxes,* 445 U.S. 425, 448, 100 S.Ct. 1223, 1237, 63 L.Ed.2d 510, 528 (1980).

**26.** Okla. Const. art. 10, § 5 provides:
"The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform upon the same class of subjects."

**27.** See *Johnston v. Oklahoma Tax Comm'n,* 497 P.2d 1295, 1298 (Okla.1972).

**28.** Title 68 O.S.1981 § 2358 provides in pertinent part:

"A. Taxable income and, where use of adjusted gross income is necessary, i.e., required by this act, adjusted gross income shall be adjusted as follows to arrive at Oklahoma taxable income and Oklahoma adjusted gross income ...

4. Items of the following nature shall be allocated as indicated. Allowable deductions attributable to items separately allocable in subparagraphs a, b and c hereof, whether or not such items of income were actually received, shall be allocated on the same basis as those items ...

b. Income from intangible personal property, such as interest, dividends, patent or copyright royalties, and gains or losses from sales of such property, shall be allocated in accordance with the domiciliary situs of the taxpayer ..."
Although this section has been subsequently amended, the quoted portion remains substantively unchanged.

Oklahoma taxable income even when the deduction has not been utilized for federal purposes.

Flint Resources contends that *In re Knosher*, 139 Vt. 285, 428 A.2d 1104–06 (1981), is controlling and that failure to allow the deduction would result in taxation of the federal "gross up." However, in *Knosher*, the Vermont court construed a state statute which indicated that the Vermont legislature contemplated adjustments to federal taxable income if the state's taxable income had not been adjusted for federally allowed credits.[29] (The Vermont court also had before it a subsequent amendment providing precisely the relief sought by the taxpayer which indicated legislative intent to allow the deduction.)

The rules of statutory construction require that the provisions of 68 O.S.1981 § 2353(3) and (12)[30] must be considered with the language of § 2358(A)(4)(b). Subsection 3 provides that *all elections* shall be identical to federal income tax choices. The word "shall" is usually given its ordi-

nary meaning of "must," implying a command or mandate.[31] Corporate taxpayers electing the foreign tax credit and forfeiting the right to take a deduction for foreign taxes are held to that election under the Oklahoma Income Tax Act. Subsection 12 defines Oklahoma taxable income as taxable income as reported to the federal government, adjusted pursuant to the Internal Revenue Code. It also binds Oklahoma taxpayers in determining the amount of Oklahoma taxable income by elections made at the federal level.

Deductions are a matter of legislative grace rather than judicial intervention.[32] The language of § 2353(3) and (12), indicates that the Legislature intended that federal elections be controlling in determining Oklahoma taxable income. The Legislature's use of the word "allowable" as opposed to "allowed" in § 2358(A)(4)(b) cannot reasonably and harmoniously be construed to mean that Oklahoma taxpayers were intended to have the option under the Income Tax Act to reevaluate federal

---

29. *In re Knosher*, 139 Vt. 285, 428 A.2d 1104, 1105 (1981). Two other courts have also held that a corporate taxpayer may deduct foreign income taxes as an allowable deduction regardless of whether the deduction was taken on the taxpayer's federal return. See, *Bogner v. State Dept.*, note 4, 107 Idaho at 856, 693 P.2d at 1058, supra and *George, Inc. v. Norberg,* — R.I. ——, 444 A.2d 868, 870 (1982), *cert denied* 459 U.S. 908, 103 S.Ct. 214, 74 L.Ed.2d 170 (1982). Like the court in *Knosher*, both the courts in *Bogner* and *George* were construing statutes which by their language indicated that the respective legislative bodies in enacting state income tax acts clearly contemplated the deduction of foreign taxes paid despite an election at the federal level to take a tax credit. The only indication of legislative intent to allow a deduction that Flint Resources can point to here is the use by the Legislature of the word "allowable" as opposed to "allowed." Although, like Oklahoma, a number of states determine their taxable income based upon some form of conformity provision relating to federal taxable income, safe generalizations cannot be made because any particular question depends entirely upon the scope of the language of the state statute and the extent to which it requires conformity with the federal scheme. Annot., "Constitutionality, Construction, and Application of Provisions of State Tax Law for Conformity with Federal Income Tax Law or Administrative and Judicial Interpretation," 42 A.L.R.2d 797–98 (1955).

30. Title 68 O.S.1981 § 2353(3) and (12) provides:

"(3) Any term used in this act shall have the same meaning as when used in a comparable context in the Internal Revenue Code, unless a different meaning is clearly required. For all taxable periods covered by this act, the tax status and all elections of all taxpayers covered by this act shall be the same for all purposes material hereto as they are for federal income tax purposes except when this act specifically provides otherwise ...

"(12) 'Oklahoma taxable income' means 'taxable income' as reported (or as would have been reported by the taxpayer had a return been filed) to the federal government, and in the event of adjustments thereto by the federal government as finally ascertained under the Internal Revenue Code, adjusted further as hereinafter provided ...'"

Although § 2353 has subsequently been revised, the above quoted portion remains identical to the 1981 provision.

31. *McDonald's v. Groves*, 652 P.2d 281–82 (Okla. 1982).

32. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348, 1352 (1934); *Harsha v. United States*, 590 F.2d 884, 886 (10th Cir.1979); *Essley v. Oklahoma Tax Comm'n*, 196 Okla. 473, 168 P.2d 111, 113 (1946).

deductions for the purpose of calculating Oklahoma taxable income.[33]

## III

INTEREST ON THE FOREIGN TAX SHOULD NOT BE REMITTED WHERE CASE LAW SUPPORTS INCLUSION OF INCOME AND NO STATUTORY PROVISION EXISTS FOR DEDUCTION. HOWEVER, BECAUSE THE TAX ON THE GROSS UP AMOUNT WAS UNCONSTITUTIONAL, THE INTEREST ON IT IS ORDERED REMITTED.

Flint Resources seeks a remittitur of interest on any portion of the disputed tax found to be owing. Title 68 O.S.1981 § 220(a)[34] provides that the Tax Commission can waive or remit any penalty or interest where failure to pay the tax is either adequately explained or the failure results from the taxpayer's mistake of law or fact. The Tax Commission denied the request for remittur after finding no mistake of law existed. The existence of § 220 does not affect this Court's power to order a remittitur of penalty or interest in an appropriate case. Remitturs have been judicially ordered where failure to pay tax has resulted from a mistake of law or fact.[35] However, existing case law from other jurisdictions supported inclusion of foreign taxes in Oklahoma taxable income, and the Oklahoma Act does not provide for the deduction. The remittur of interest on the amount assessed on the proposed deduction for foreign taxes paid is denied.

Because the tax on the foreign "gross up" was unconstitutional, the additional assessment on the "gross up" and the interest on the "gross up" is ordered remitted.

AFFIRMED IN PART; REVERSED IN PART.

HARGRAVE, C.J., OPALA, V.C.J., and LAVENDER, DOOLIN and SUMMERS, JJ., concur.

SIMMS, J., concur in result.

**33.** A majority of courts addressing this issue are in accord with our finding. See, *Skaarup Shipping Corp. v. Comm'r of Revenue Servs.,* 199 Conn. 346, 507 A.2d 988, 991 (1986); *Caterpillar Tractor Co. v. Lenckos,* see note 12, supra; *Albany Int'l Corp. v. Halperin,* see note 22, supra; *Commonwealth v. Westinghouse Elec. Corp.,* see note 22, supra; See also, *Getty Oil Co. v. Taxation & Revenue Dept.,* 93 N.M. 589, 593, 603 P.2d 328, 332 (1979), holding that no matter where the figure for federal taxable income is found in a consolidated federal return, that figure is the one intended to be shown as base income for state tax purposes; and *Sutin, Thayer & Browne v. Revenue Div.,* 104 N.M. 633, 635, 725 P.2d 833, 835 (Ct.App.1984), holding that a taxpayer who makes an election for federal tax purposes is bound by that election in calculating state taxes.

**34.** Title 68 O.S. 1981 § 220(a) provides:
"The interest or penalty or any portion thereof ordinarily accruing by reason of a taxpayer's failure to pay a state tax within the statutory period allowed for its payment may be waived or remitted by the Tax Commission provided the taxpayer's failure to pay the tax is satisfactorily explained to the Tax Commission, or provided such failure has resulted from a mistake by the taxpayer of either the law or the facts subjecting him to such tax, or inability to pay such interest or penalty resulting from insolvency."

**35.** *Rogers v. Oklahoma Tax Comm'n,* 466 P.2d 650, 654 (Okla.1970); *In re Woods Corp.,* 531 P.2d 1381, 1386 (Okla.1975).