COMMISSIONER OF REVENUE *vs.* PAUL R. DUPEE, JR., &
another.[1]

Suffolk. November 9, 1995. - September 25, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Taxation,* Income tax, Nonresident. *Statute,* Construction.

The Appellate Tax Board correctly concluded that a nonresident, who held
   shares in a Massachusetts Subchapter S corporation and who, pursuant
   to a liquidation plan, received a distribution of corporate assets, some of
   which were exchanged in tax free transactions and the remainder of
   which were sold, was not liable to pay taxes on the capital gain of the
   assets sold, where, pursuant to G. L. c. 62, § 24, applicable to the 1986
   tax year, the gain was not "income derived from . . . [a] trade or busi-
   ness . . . carried on by the taxpayer in the commonwealth." [620-625]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Kristin E. McIntosh,* Assistant Attorney General, for the
plaintiff.

*Roger M. Ritt (Gary P. Brady* with him) for the defendants.

O'CONNOR, J. The Commissioner of Revenue (commis-
sioner) denied Paul R. Dupee, Jr., and Lizbeth Schiff's ap-
plication for abatement of individual nonresident income tax
for 1986 on their capital gain of $16,712,072 from the sale of
a portion of Dupee's interest in Boston Celtics, Inc. (BCI).
Dupee and Schiff (taxpayers) filed a petition for review with
the Appellate Tax Board (board). The board concluded that
the gain realized by Dupee was not subject to tax in Mas-
sachusetts and, accordingly, granted an abatement to the
taxpayers in the sum for which they had applied, $835,604.
The commissioner appealed pursuant to G. L. c. 58A, § 13
(1994 ed.), and we transferred the case here on our own ini-
tiative. We affirm the board's decision.

[1]Lizbeth Schiff. The defendants are husband and wife. They filed a Mas-
sachusetts joint income tax return for 1986.

The case was submitted to the board on a statement of agreed facts and a stipulation with attached exhibits. In addition, one witness testified. On the basis of those documents and the witness's testimony, the board made its findings, which we summarize: The taxpayers were nonresidents of Massachusetts at all relevant times. In 1986, Dupee owned thirty-two per cent of the stock in BCI, the Massachusetts corporation which held the franchise from the National Basketball Association (NBA) to organize and operate the Boston Celtics basketball team. For Federal income tax purposes, BCI was treated as a Subchapter S corporation. BCI became a Subchapter S corporation for Massachusetts tax purposes beginning with its taxable year commencing on July 1, 1986. BCI maintained offices in Boston, where employees handled BCI's day-to-day operations, including acquiring players, selling game tickets, negotiating contracts, and hiring staff. Dupee, who was vice chairman of the board of directors and secretary, "did not actively, regularly, or continuously participate in any capacity in the activities constituting the regular operations of [BCI]," nor did he maintain any office, employees, or place of business in Massachusetts, or purchase goods or services in connection with a trade or business in Massachusetts.

Dupee and the other shareholders of BCI agreed to liquidate BCI and transfer ownership of its assets, including the franchise, to a partnership, which would allow members of the public to obtain interests in the franchise. On December 11, 1986, BCI liquidated in a tax-free exchange under a now defunct provision[2] of the Internal Revenue Code (I.R.C.), 26 U.S.C. §§ 1 et seq. (1994), distributing to the shareholders their undivided percentage interests in BCI's assets. Upon receiving an undivided 32 per cent interest in the assets, Dupee made a tax-free exchange under I.R.C. § 721 (a) of 14.72 per cent of his assets for an equivalent percentage interest in the new partnerhip. In an additional transaction rendered tax free under I.R.C. § 351, Dupee exchanged .28 per cent of his interest in the assets for an interest in Celtics, Inc., a new

[2]Section § 333 of the I.R.C., which was repealed on October 22, 1986, by Pub. L. 99-514, Title VI, § 631 (e) (3), 100 Stat. 2273, allowed the corporation to make a liquidating distribution of appreciated assets to its shareholders without the shareholders recognizing the gain immediately. See 26 U.S.C. § 333 (1982).

Delaware Subchapter S corporation formed to serve as the general partner of the partnership. The taxability of Dupee's gain on the sale of his remaining interest in BCI's assets to the partnership for $18,602,675, resulting in a long-term capital gain of $16,712,072, is at issue.

General Laws c. 62, § 5A (*a*), as amended through St. 1983, c. 233, § 24, applicable to the relevant tax year, provided as follows:

> "The amount of the Part A taxable income and the Part B taxable income of any non-resident of the commonwealth derived from the Massachusetts gross income of such person shall be taxed in accordance with the provisions of section four. The Massachusetts gross income shall be determined solely with respect to items of gross income from sources within the commonwealth of such person and in determining the adjusted gross income of each Part only those deductions shall be allowed which are attributable to items included in Massachusetts gross income as so determined. *Items of gross income from sources within the commonwealth are items of gross income derived from or effectively connected with (1) any trade or business, including any employment carried on by the taxpayer in the commonwealth*; (2) the participation in any lottery or wagering transaction within the commonwealth; or (3) the ownership of any interest in real or tangible personal property located in the commonwealth. In computing the taxable income of each Part, the non-resident shall be allowed the deductions and exemptions provided as to each Part in section three" (emphasis added).

General Laws c. 62, § 5A (*a*), sets forth the statutory scheme for income taxation of nonresidents of Massachusetts. At issue in this case is the proper construction of the portion we have emphasized above. The board ruled, favorably to the taxpayers, that, in order for Dupee's capital gain to be taxable by the Commonwealth, the source of the gain would have to have been a trade or business personally "carried on by the taxpayer in the commonwealth" [c. 62, § 5A (*a*) (1)]. The board concluded that the source of Dupee's gain was not a trade or business "carried on by the taxpayer in the commonwealth," and that, therefore, the taxpayers were entitled to the abatement for which they had applied.

The commissioner contended before the board, and contends here, that the plain language of G. L. c. 62, § 5A (a) (1), requires only that Dupee's gain on the sale of his BCI interest be "derived from" or "effectively connected with" a Massachusetts trade or business and contains no requirement that the nonresident personally conduct the Massachusetts business giving rise to the income. In addition, the commissioner points to a rule of statutory construction known as the "last antecedent rule," which would limit the application of the words in c. 62, § 5A (a) (1), "carried on by the taxpayer," to the immediately preceding words, "any employment." The commissioner argues that the applicability of the last antecedent rule to § 5A (a) (1) is supported by the lack of a comma between the words "employment" and "carried" in that provision ("[1] any trade or business, including any employment carried on by the taxpayer in the commonwealth"). If we were to apply the last antecedent rule, the words "carried on by the taxpayer" would not modify the words "any trade or business." The capital gain at issue would be taxable simply because its source, BCI, was a business carried on by someone, not necessarily Dupee, in Massachusetts. See *Russell* v. *Boston Wyman, Inc.*, 410 Mass. 1005, 1006 (1991), quoting *United States* v. *Ven-Fuel, Inc.*, 758 F.2d 741, 751 (1st Cir. 1985) ("last antecedent rule" is that "qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote").

"The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975), quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). The last antecedent rule "is only a rule of construction to ascertain the legislative intent." *Selectmen of Topsfield* v. *State Racing Comm'n*, 324 Mass. 309, 312 (1949). It does not apply where "there is something in the subject matter or in the expression of the dominant purpose that requires a different interpretation." *Id.*

Contrary to the commissioner's argument, the Legislature's failure to position a comma between the words "employment" and "carried" as they appear in G. L. c. 62, § 5A (*a*), does not denote the Legislature's intent to tax all nonresident income from Massachusetts sources regardless of whether the taxpayer personally carries on that business. See *Costanzo* v. *Tillinghast*, 287 U.S. 341, 344 (1932) ("It has often been said that punctuation is not decisive of the construction of a statute," citing several cases). We construe the relevant portion of the statute to mean that "[i]tems of gross income from sources within the commonwealth are items of gross income derived from or effectively connected with (1) any trade or business . . . carried on by the taxpayer in the commonwealth." Our reading of the statute is consistent with regulations the Department of Revenue promulgated pursuant to the statute, a letter ruling the commissioner issued, and instructions relative to tax forms for the year at issue.

Title 830 Code Mass. Regs. § 62.5A.1 (4) (a) (1993) specifically provides that a nonresident, defined in 830 Code Mass. Regs. § 62.5A.1 (2) (1993) as an individual whose domicil is outside Massachusetts, carries on a trade or business in Massachusetts

> "1. [i]f the non-resident, directly or through agents or employees, maintains or operates or shares in maintaining or operating a desk, a room, an office, a shop, a store, a warehouse, a factory, or any other place in Massachusetts where the business affairs are systematically and regularly conducted; or 2. If the non-resident, directly or through agents or employees, is present for business in Massachusetts as either an employee, sole proprietor, or other self-employed individual."

The board's conclusion that Dupee does not satisfy the criteria in 830 Code Mass. Regs. § 62.5A.1 (4) is correct, especially in light of the commissioner's own stipulation that Dupee "did not actively, regularly, or continuously participate in any capacity in the activities constituting the regular operation of [BCI]."

Letter Ruling 83-23, 2 Official Mass Tax Guide at 647 (West 1996) states:

> "Massachusetts General Laws Chapter 62, Section

5A, provides that the Massachusetts gross income of a nonresident is determined solely with respect to items of gross income from sources within the Commonwealth. Such items are those which are derived from or effectively connected with any trade of business *carried on by the taxpayer in the Commonwealth* or derived from the ownership of any interest in real or tangible personal property located in the Commonwealth. Dividend income from a Massachusetts corporation is income from intangible personal property and is not taxable to nonresidents" (emphasis added).

Finally, the instructions to Form 1-NR for 1986 explicitly state that "nonresident is only subject to tax on items of income derived from or effectively connected with . . . any *trade or business he or she carries on in [Massachusetts]*" (emphasis added). We recently stated in *Commissioner of Revenue* v. *Baybank Middlesex*, 421 Mass. 736, 740 (1996):

"With respect to taxation, the commissioner to one extent or another is bound by a variety of informal policymaking devices [including] letter rulings . . . . Instructions that explain and guide the taxpaying public through the revenue laws are no different. 830 Code Mass. Regs. § 62C.3.1 (9) (1993). Cf. *First Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n*, 372 Mass. 478, 485 (1977) (tax return instructions express commissioner's view), aff'd, 437 U.S. 255 (1978)."

The board's ruling on this issue, with which we agree, respects the principle that "ambiguities in taxing statutes are to be resolved in favor of the taxpayer." *McCarthy* v. *Commissioner of Revenue*, 391 Mass. 630, 633 (1984), quoting *Cabot* v. *Commissioner of Corps. & Taxation*, 267 Mass. 338, 340 (1929). See *Grady* v. *Commissioner of Revenue*, 421 Mass. 374, 377 (1995), quoting *Commissioner of Revenue* v. *AMI Woodbroke, Inc.*, 418 Mass. 92, 94 (1994) ("[t]axing statutes are to be construed strictly against the taxing authority, and all doubts resolved in favor of the taxpayer"). Furthermore, the board's decision avoids the far-reaching result the commissioner's interpretation of the statute would entail, which would be to tax nonresidents having no business activity in

Massachusetts on their gains from sales of stock in Massachusetts corporations. For all these reasons, we reject the commissioner's argument that the board erred in ruling that the statute did not subject Dupee to nonresident income tax on income derived from or connected with a Massachusetts business where he did not personally carry on a Massachusetts trade or business.

The commissioner also argues that, even if, for Dupee's gain to be taxable, Dupee must have personally carried on the business which was the source of his gain, the board erred in failing to hold that the business of BCI, a Subchapter S corporation, passed through to Dupee, one of its shareholders, and therefore was carried on by Dupee. As authority for his contention that the pass-through feature of Subchapter S corporations permits the trade or business of BCI to be treated as the trade or business of Dupee, the commissioner cites the following language appearing in G. L. c. 62, § 17A (1994 ed.):

> "The character of any item of income, loss, deduction or credit included in a shareholder's distributive share shall be determined as if such item were realized or incurred directly by the shareholder from the source from which realized by the corporation . . . ."

The commissioner also argues that his position is supported by 830 Code Mass. Regs. § 62.17A.1 (6) (b), which was promulgated in 1990 and interprets G. L. c. 62, § 17A as providing:

> "The trade or business of the Massachusetts S corporation is treated as the trade or business of the shareholder in determining the taxation of interest, dividends, and capital gains as Massachusetts source income."

The board was correct in ruling that G. L. c. 62, § 17A, and the authorities interpreting it are inapplicable to Dupee's gain on the sale of his BCI interest. The gain was not the corporation's gain. The gain inured to Dupee outside the S corporation, rather than passing through BCI to him as a "distributive share" of a gain to the S corporation.

The commissioner argues that the step-transaction doctrine

applies to collapse the liquidation, distribution, and new partnership transactions of December 11, 1986, and allows the Commonwealth to tax Dupee on his "distributive share" of the assets of the liquidated BCI. As explained in 11 Mertens, Federal Income Taxation § 43.253, at 347 (1995), the step-transaction doctrine

> "requires any series of interrelated transactions to be treated, for tax purposes, as a single integrated event- . . . . As such, the step transaction doctrine presents a corollary to the general principle that taxation depends upon the substance of a transaction rather than its form."

In Rev. Rul. 79-250, 1979-2 C.B. 156, the Internal Revenue Service stated that the step-transaction doctrine does not apply to steps that have independent economic significance:

> "The Internal Revenue service has indicated on several occasions that threshold steps will not be disregarded under a step transaction analysis if such preliminary activity results in a permanent alteration of a previous bona fide business relationship. Thus, the substance of each of a series of steps will be recognized and the step transaction doctrine will not apply, if each such step demonstrates independent economic significance, is not subject to attack as a sham, and was undertaken for valid business purposes and not mere avoidance of taxes."

We conclude that the board properly found that the steps in the subject transaction "had independent economic significance and were undertaken for a valid business purpose . . . [which was] to provide a vehicle for making a public offering of interests in the Boston Celtics franchise." As the board noted, the liquidation of the Subchapter S corporation (BCI) and creation of the limited partnership holding the franchise enabled public investment in the Celtics because I.R.C. § 1361 (b)(1)(A) limits Subchapter S corporations to thirty-five shareholders. Although, as Dupee recognizes in his brief, the liquidation of BCI could have been structured in another manner, we uphold Dupee's asserted "legal right [as] a taxpayer to decrease the amount of what otherwise would be

his taxes, or altogether avoid them, by means which the law permits." *Gregory* v. *Helvering*, 293 U.S. 465, 469 (1935).

Finally, the commissioner contends that Dupee's direct ownership of the BCI assets on liquidation was sufficient to impute the business of the Celtics to him. We agree with the board, however, that Dupee was not carrying on a trade or business when he held assets of the former BCI momentarily for the purpose of transferring them to the partnership. See *Commissioner* v. *Groetzinger*, 480 U.S. 23, 35 (1987) (activities constituting a trade or business must be pursued "with continuity and regularity"); *Keenan* v. *Commissioner*, 57 Tax Ct. Mem. Dec. (CCH) 762, 771 (1989) (taxpayer does not engage in trade or business merely by acquiring a business asset); *Graves* v. *Commissioner*, 11 Tax Ct. Mem. Dec. (CCH) 467 (1952) (taxpayer employed at mill was not subject to taxation on gain from sale of mill assets owned, as he was not a dealer in those goods but merely sought to liquidate them quickly).

*Decision of the Appellate Tax*
*Board affirmed.*