2005 OK CIV APP 75

**GENERAL ACCESSORY MANUFACTURING COMPANY by Real Parties in Interest, Ben Chatham, Gary Chatham and Michael Marks, Protestants/Appellants,**

v.

**OKLAHOMA TAX COMMISSION, Respondent/Appellee.**

**No. 100,453.**

Court of Civil Appeals of Oklahoma, Division No. 3.

May 6, 2005.

As Corrected June 14, 2005.

Certiorari Denied Sept. 27, 2005.

James Dudley Hyde, Phillip D. Hart, Jennifer Henderson Callahan, McAfee & Taft, A Professional Corporation, Oklahoma City, OK, for Appellant.

Douglas B. Allen, General Counsel, J.L. Miller, Assistant General Counsel, Lyn Martin–Diehl, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, OK, for Appellee.

LARRY JOPLIN, Presiding Judge.

¶ 1 Protestants/Appellants General Accessory Manufacturing Company by Real Parties in Interest, Ben Chatham, Gary Chatham and Michael Marks (collectively, Taxpayers), seek review of an order of the Respondent/Appellee Oklahoma Tax Commission (OTC or Commission) denying them a refund of income taxes. In this proceeding, the non-resident Taxpayers challenge the Commission's determination that the gain on the sale of all their stock in their Oklahoma corporation is treated as Oklahoma income subject to Oklahoma income tax.

¶ 2 The non-resident Taxpayers, Ben Chatham, Gary Chatham and Michael Marks, owned all the stock in General Accessory Manufacturing Company (GAMCO), an Oklahoma subchapter S corporation. In May 1998, pursuant to a stock purchase agreement, the Taxpayers sold all their GAMCO stock to Masco Corporation, a Delaware corporation domiciled in Michigan, and, as permitted for federal income tax purposes, the parties agreed and elected to treat the stock sale as a sale of assets. See, I.R.C. § 338(h)(10), 26 U.S.C.A. (West, 2004).[1] By letter ruling, OTC initially advised the non-resident Taxpayers that the gain from the § 338 "deemed sale of assets" election would not be subject to Oklahoma income tax.

¶ 3 In November 1998, Masco filed the original GAMCO federal income tax return for an S Corporation with the I.R.S. Masco reported a total property distribution other than dividends of twenty-six million seven hundred sixty-three thousand four hundred forty-one dollars ($26,763,441.00), of which it claimed twenty-one million seven hundred fifty-five thousand, nine hundred and seventy dollars ($21,755,970.00) as net long-term capital gain attributable to "goodwill." Masco attached the parties' joint election to treat the stock sale as a sale of assets permitted by § 338.

¶ 4 In December 1998, Masco filed the original GAMCO Oklahoma corporate income tax return for the period January 1, 1997 through April 30, 1998. Masco reported "Non–Resident Share of Income," i.e., the gain realized by Taxpayers from the sale of all their GAMCO stock, of twenty-two mil-

---

1. That section is entitled, "Elective recognition of gain or loss by target corporation, together with nonrecognition of gain or loss on stock sold by selling consolidated group," and provides:

(A) In general. Under regulations prescribed by the Secretary, an election may be made under which if (i) the target corporation was, before the transaction, a member of the selling consolidated group, and (ii) the target corporation recognizes gain or loss with respect to the transaction as if it sold all of its assets in a single transaction, then the target corporation shall be treated as a member of the selling consolidated group with respect to such sale, and (to the extent provided in regulations) no gain or loss will be recognized on stock sold or exchanged in the transaction by members of the selling consolidated group.

(B) Selling consolidated group. For purposes of subparagraph (A), the term "selling consolidated group" means any group of corporations which (for the taxable period which includes the transaction) (i) includes the target corporation, and (ii) files a consolidated return. To the extent provided in regulations, such term also includes any affiliated group of corporations which includes the target corporation (whether or not such group files a consolidated return).

(C) Information required to be furnished to the Secretary. Under regulations, where an election is made under subparagraph (A), the purchasing corporation and the common parent of the selling consolidated group shall, at such times and in such manner as may be provided in regulations, furnish to the Secretary the following information: (i) The amount allocated under subsection (b)(5) to goodwill or going concern value[;] (ii) Any modification of the amount described in clause (i)[;][and] (iii) Any other information as the Secretary deems necessary to carry out the provisions of this paragraph.

lion, five hundred eighty-three thousand four hundred ninety-five dollars ($22,583,495.00), and paid Oklahoma income tax of one million, three hundred fifty-five thousand and ten dollars ($1,355,010.00) as tax on the § 338(h)(10) "deemed sale of assets."

¶ 5 In November 2001, Taxpayers filed an amended Oklahoma corporate income tax return, seeking to reclassify the "deemed sale of assets" as a sale of stock, i.e., the sale of intangible personal property for which the non-resident Taxpayers bore no Oklahoma income tax liability. The return consequently listed "Non-resident Share of Income" of one million seven hundred fifty-eight thousand four hundred twenty dollars ($1,755,-420.00), and state income tax thereon of one hundred five thousand, five hundred five dollars ($105,505.00), thus arguably supporting Taxpayers' entitlement to a refund of one million two hundred fourteen thousand, three hundred forty-five dollars ($1,214,345.00).

¶ 6 In January 2002, the Audit Division of OTC denied a refund. Upon review, an administrative law judge recommended denial of a refund. In March 2004, the Commission adopted the findings, conclusions and recommendations of the ALJ, and denied the claim for refund. Taxpayers appeal.

¶ 7 Taxpayers argue that their permitted I.R.C. § 338(h)(10) election to treat the sale of stock as a sale of assets for federal income tax purposes did not subject them, as non-residents of the state, to liability for Oklahoma income tax because, under the Oklahoma Income Tax Act (Act), 68 O.S. §§ 2351, et seq., a sale of stock is treated as a sale of intangible personal property, subject to tax only in the state of the shareholder/seller's domicile. 68 O.S. § 2358(A)(4)(b)[2]; *Davis v. Oklahoma Tax Commission*, 1971 OK 109, ¶¶ 12, 15, 20, 488 P.2d 1261, 1263.[3] Here, Taxpayers assert that to construe the Act's "piggyback" provision, § 2353(3), which holds "the tax status and all elections of all taxpayers covered by [the Act] [to] be the same for all purposes material hereto as they are for federal income tax purposes," as requiring a non-resident's payment of state income tax on gain from sale of a state corporation's intangible assets, raises some constitutional doubt concerning the reach of this State's power to tax a non-resident's gain from sale of the non-resident's interest in a Oklahoma domiciled corporation. *See, Commissioner of Revenue v. Dupee*, 423 Mass. 617, 670 N.E.2d 173, 177, 178 (Ma.1996); *International Harvester Co. v. Wisconsin Dept. of Taxation*, 322 U.S. 435, 442, 443, 64 S.Ct. 1060, 1064, 1065, 88 L.Ed. 1373, 1379 (U.S.(Wis.) 1944); *Shaffer v. Carter*, 252 U.S. 37, 57, 40 S.Ct. 221, 227, 64 L.Ed. 445, 458 (U.S.(Okl.) 1920). So, conclude Taxpayers, because the "except when [the Act] specifically provides otherwise" language of § 2353(3) clearly permits a different state income tax treatment of an I.R.C. § 338(h)(10) "deemed" sale of assets, i.e., as a sale of intangible personal property under § 2358(A)(4)(b), and such a construction of § 2353(3) frees the section of possible constitutional infirmity, we must so construe § 2353(3). *See, e.g., Unit Petro-*

---

**2.** "Items of the following nature shall be allocated as indicated. Allowable deductions attributable to items separately allocable in subparagraphs a, b and c of this paragraph, whether or not such items of income were actually received, shall be allocated on the same basis as those items:.... Income from intangible personal property, such as interest, dividends, patent or copyright royalties, and gains or losses from sales of such property, shall be allocated in accordance with the domiciliary situs of the taxpayer, except that: where such property has acquired a nonunitary business or commercial situs apart from the domicile of the taxpayer such income shall be allocated in accordance with such business or commercial situs; interest income from investments held to generate working capital for a unitary business enterprise shall be included in apportionable income; a resident trust or resident estate shall be treated as having

a separate commercial or business situs insofar as undistributed income is concerned, but shall not be treated as having a separate commercial or business situs insofar as distributed income is concerned, ... "

**3.** "[T]he situs of intangible property for the purposes of taxation is at the owner's domicile"; "[T]he capital gain income of taxpayer was subject to Oklahoma income tax unless the circumstances were such that the income fell within [a statutory] exception ... [and][t]he question is, did taxpayer's stock (intangible personal property) ... acquire a business or commercial situs in Texas apart from the taxpayer's domicile in Oklahoma?" Held: "[T]he stock did not have a business or commercial situs in Texas and that the income tax was properly assessed against the taxpayer in Oklahoma, the domicile of taxpayer."

*leum Co. v. Oklahoma Water Resources Bd.,* 1995 OK 73, ¶ 6, 898 P.2d 1275, 1277; *Neumann v. Tax Commission,* 1979 OK 64, ¶ 7, 596 P.2d 530, 532.

¶ 8 The Commission responds, asserting that the state may constitutionally tax a non-resident's income derived from sources within the state, or accruing from activity having a situs with the state. *Oklahoma Tax Commission v. American Refrigerator Transit Co.,* 1959 OK 271, ¶ 18, 349 P.2d 746, 749; *Chestnut Securities Co. v. Oklahoma Tax Commission,* 125 F.2d 571, 575 (10th Cir. 1942) (Writ of Certiorari Denied, 316 U.S. 668, 62 S.Ct. 1035, 86 L.Ed. 1744.) Moreover, says OTC, by force of the Act, federal elections control in determining Oklahoma taxable income. 68 O.S. §§ 2353(3), (12)[4]; *Matter of Income Tax Protest of Flint Resources,* 1989 OK 9, ¶ 19, 780 P.2d 665, 673–674.[5] So, the Commission concludes, because Taxpayers elected to treat the sale of stock as a sale of corporate assets and "income" for federal tax purposes, and § 2353 mandates the same treatment for state income tax purposes, the gain from the I.R.C. § 338(h)(10) "deemed" sale of Oklahoma corporate assets, both tangible and intangible, is taxable as Oklahoma income. 68 O.S. §§ 2358(A)(4)(a), (b)(1); *Getty Oil Co. v. Oklahoma Tax Commission,* 1977 OK 19, ¶ 9, 563 P.2d 627, 630.

¶ 9 "[T]he Legislature may, with or without exceptions, modifications, or adjustments, define the amount on, in respect to, or by which any such tax or taxes are imposed or measured (a) by reference to any provisions of the laws ... of the United States, as such laws may be or become effective at any time or from time to time; (b) by reference to any amount or amounts finally ascertained in determining amounts subject to taxation by the United States; or (c) by reference to any amount or amounts of tax finally ascertained to be payable to the United States." Ok.

Const. Art. 10, § 12. In this respect, "[t]he federal/state 'piggy-back' system has been in effect in Oklahoma since enactment of the 1971 income tax code, pursuant to constitutional amendment in 1968[,][and][t]he statutory definitions of 'Oklahoma taxable income' and 'Oklahoma adjusted gross income' mirror the constitutional language in Okla. Const., Art. 10, § 12." *Dugger v. State ex rel. Oklahoma Tax Com'n,* 1992 OK 105, ¶ 4, 834 P.2d 964, 970, fn. 2.

¶ 10 The parties raise no challenge to the validity of Oklahoma's "federal/state 'piggy back' system" under the U.S. Constitution. To the extent § 2353(3) pegs Oklahoma income to that reported for federal tax purposes, we consequently discern no constitutional flaw. The question then becomes whether the "except" language of § 2353(3), when read together with § 2358(A)(4)(b), permits the treatment of gain from an I.R.C. § 338(h)(10) "deemed" sale of assets for federal income tax purposes differently and as a sale of intangible personal property for state income tax purposes.

¶ 11 In *Matter of Income Tax Protest of Flint Resources,* the taxpayer corporation took a foreign tax credit on its federal return, but claimed a deduction for foreign taxes paid on its state return. 1989 OK 9, ¶ 5, 780 P.2d at 667–668. OTC assessed additional tax and thereby, disallowed the deduction for foreign tax paid. *Flint Resources, 1989 OK 9,* ¶ 6, 780 P.2d at 668. On appeal, the Oklahoma Supreme Court affirmed, holding:

> Corporations choosing to take the federal foreign tax credit, rather than a deduction for foreign taxes paid, must include the amount representing foreign taxes within Oklahoma taxable income.

*Flint Resources,* 1989 OK 9, ¶ 2, 780 P.2d at 667. In so holding the Supreme Court reasoned:

> The language of § 2353(3) and (12), indicates that the Legislature intended that federal elections be controlling in deter-

---

4. " 'Oklahoma taxable income' means 'taxable income' as reported (or as would have been reported by the taxpayer had a return been filed) to the federal government, and in the event of adjustments thereto by the federal government as finally ascertained under the Internal Revenue Code, adjusted further as hereinafter provided; . . . ."

5. "The language of § 2353(3) and (12), indicates that the Legislature intended that federal elections be controlling in determining Oklahoma taxable income."

mining Oklahoma taxable income. The Legislature's use of the word 'allowable' as opposed to 'allowed' in § 2358(A)(4)(b) cannot reasonably and harmoniously be construed to mean that Oklahoma taxpayers were intended to have the option under the Income Tax Act to reevaluate federal deductions for the purpose of calculating Oklahoma taxable income.

*Flint Resources,* 1989 OK 9, ¶ 19, 780 P.2d at 673–674.

¶ 12 We think that same reasoning applies in the present case. So, the fact that, under § 2358(A)(4)(b) of the Act, a sale of stock is treated as a sale of intangible personal property for state tax purposes does not mean that the legislature intended that an Oklahoma taxpayer might recharacterize what has been reported as an I.R.C. § 338(h)(10) sale of assets for federal tax purposes in calculating Oklahoma income.

¶ 13 The power to tax a non-resident's income derived from sources within the state, or accruing from activity having a situs within the state, cannot be questioned. The Commission found that Taxpayer corporation was domesticated in and derived all of its income from sources within the State, and that finding of fact is not challenged on appeal. For federal tax purposes, Taxpayers elected to treat the sale of stock in their Oklahoma corporation as a sale of corporate assets, and their federal election is binding for state tax purposes. As the business situs of the corporation with income derived from sources within the State, the sale of its assets constituted a state taxable event, and permissibly subjected the non-resident Taxpayers to liability for Oklahoma income tax.

¶ 14 The order of the Oklahoma Tax Commission is free of legal error and supported by the evidence adduced. *Blitz U.S.A., Inc. v. Oklahoma Tax Com'n,* 2003 OK 50, ¶ 6, 75 P.3d 883, 885; *Dugger,* 1992 OK 105, ¶ 9, 834 P.2d at 968. The order of the Oklahoma Tax Commission is therefore AFFIRMED.

HANSEN, J., and MITCHELL, J., sitting by designation, concur.