COMMISSIONER OF REVENUE *vs.* R. BRUCE OLIVER & another.[1]

Suffolk. December 4, 2001. - April 8, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Taxation,* Income tax, Nonresident, Gross income. *Administrative Law,* Regulations.

The Appellate Tax Board correctly concluded that nonqualified pension payments received by a nonresident taxpayer from his former Massachusetts employer during years in which the taxpayer did not carry on any trade or business in Massachusetts was not Massachusetts-source income and therefore not taxable under G. L. c. 62, § 5A (*a*) (1), for the years at issue. [469-473]

This court declined an invitation from the Commissioner of Revenue to overrule the decision of the Appeals Court in *Commissioner of Revenue* v. *Destito,* 23 Mass. App. Ct. 977 (1987), because *Destito* was in accord with this court's own reading of G. L. c. 62, § 5A (*a*) (1), and represented the settled interpretation of the statute. [473-475]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*Diane M. McCarron* for Commissioner of Revenue.

*John S. Brown* (*Matthew D. Schnall* with him) for the taxpayers.

MARSHALL, C.J. General Laws c. 62, § 5A (*a*), sets forth the statutory scheme for income taxation of nonresidents of Massachusetts. We are asked to determine whether, under that statute, a nonresident must pay Massachusetts income taxes on nonqualified pension payments received from his former Massachusetts employer during those years in which the taxpayer did not carry on any trade or business in Massachusetts. The Appellate Tax Board (board) concluded that the pension payments were not Massachusetts-source income and therefore not

[1]Sylvia B. Oliver is a party to this appeal as a result of filing a joint nonresident return with her husband for the taxable years at issue in this case.

taxable under G. L. c. 62, § 5A, for the applicable tax years. The Commissioner of Revenue (commissioner) appealed from that decision pursuant to G. L. c. 58A, § 13, and we granted his application for direct appellate review. We affirm the board's decision.

We summarize the findings made by the board, which are based on a statement of agreed facts and attached exhibits. From 1991 through 1995, the years at issue, the taxpayers, R. Bruce Oliver (Oliver) and Sylvia B. Oliver, were domiciled in Florida. Prior to his retirement in 1991, Oliver had been employed in Massachusetts by Hancock Advisers and its parent company, John Hancock Mutual Life Insurance Company (John Hancock), for over twenty-eight years.[2] On February 10, 1989, Oliver entered into a severance agreement with Hancock Advisers under which he would remain on active employee status through December 31, 1989, subsequent to which he would take nominal employee status for a nineteen-month period ending on August 1, 1991, the effective date of his retirement.[3] The severance arrangement provided Oliver with deferred compensation payments to commence on his retirement. During 1991, Oliver received severance payments totaling $227,734. He also began to receive nonqualified pension plan payments that, from 1991 to 1995, totaled $387,641.[4] During those years, Oliver did not perform any services for his former employer and was not present in Massachusetts for any business purposes.

[2]Oliver was employed by John Hancock for eight and one-half years and by Hancock Advisers for twenty years.

[3]For the purposes of calculating payments due to Oliver under the pension plan, the nineteen-month period was included in the determination that Oliver completed thirty-one years and five months of employment. Under the terms of the severance agreement, Oliver agreed not to undertake full-time employment, and to make himself available, as required, to perform services as a consultant for the chairman of the board or the chief executive officer during this period. He was never asked to perform any such services.

[4]Qualified pension income meets certain requirements under the Internal Revenue Code (I.R.C.) with regard to contribution limits, participation requirements and funding requirements that qualify the plan for preferential tax treatment such as a tax exemption for the fund, deductions for the employer, and a tax deferral to the employee for the employer's contributions and earnings thereon. 2001 United States Master Tax Guide, Chapter 21 Retirement Plans, par. 2101 (CCH). Nonqualified plans do not meet these limitations and do not

On their Massachusetts nonresident income tax return for 1991, the taxpayers did not treat any of the nonqualified pension plan payments received by Oliver as Massachusetts-source income, and claimed a refund of the amounts withheld by Hancock Advisers. In connection with an audit of that return, the commissioner issued a notice of intention to assess and then a notice of assessment, which the taxpayers paid. The taxpayers thereafter filed Massachusetts nonresident income tax returns for the tax years 1992 and 1993, which excluded from their Massachusetts gross income the nonqualified pension plan payments received by Oliver. The commissioner assessed deficiencies as to both years. The taxpayers then filed Massachusetts nonresident income tax returns for tax years 1994 and 1995, which included the pension plan payments as Massachusetts gross income. For the 1991-1995 tax years, the taxpayers paid a total tax of $22,453 on the pension payments.

The taxpayers filed applications for abatement for each of the years at issue. On September 29, 1997, the commissioner denied the abatement application for 1995. The remaining applications were later deemed denied when the taxpayers withdrew their consent to extend the time for their consideration. The taxpayers filed a petition for review with the board. The commissioner subsequently concluded that Oliver's severance payments were not taxable as Massachusetts-source income, and agreed to abate $14,233 of tax assessed in connection with those payments only. The nonqualified pension plan tax payments in the amount of $22,453 remain in dispute.

General Laws c. 62, § 5A (a), provides in relevant part that Massachusetts nonresident gross income shall be determined "*solely* with respect to items of gross income from sources within the commonwealth" (emphasis added). The statute then defines "items of gross income from sources within the commonwealth" as "gross income derived from or effectively connected with (1) *any trade or business, including any employ-*

qualify for the tax benefits. *Id.* at par. 2117.

The commissioner notes that the taxpayer's nonqualified pension income is not taxable in Massachusetts after 1995 due to the enactment of Federal legislation prohibiting nondomiciliary States from taxing qualified and certain nonqualified pension income received by nonresidents. 4 U.S.C. § 114 (State Taxation of Pension Income Act of 1995) (2000).

*ment carried on by the taxpayer in the commonwealth*; (2) the participation in any lottery or wagering transaction within the commonwealth; or (3) the ownership of any interest in real or tangible personal property located in the commonwealth" (emphasis added). Nonqualified pension plan income is deferred compensation and is taxable on receipt rather than when it is earned. See G. L. c. 62, § 2 (*a*); I.R.C. §§ 61 (*a*) (11), 401, 451 (*a*) (2000). Because a nonresident may be taxed only on income from a "source" within the Commonwealth, we must determine whether Oliver's nonqualified pension payments received during the years 1991 through 1995 were from such a "source."

General Laws c. 62, § 5A (*a*) (1), is the only subsection relevant to our inquiry.[5] The board ruled that income "derived from or effectively connected with . . . any trade or business, including any employment carried on by the taxpayer in the commonwealth," G. L. c. 62, § 5A (*a*), can be taxed as Massachusetts-source income only to the extent that it is "income from business activities that are actually carried on by a non-resident taxpayer during the tax year in which the income is received." The taxpayers do not dispute that Oliver's pension payments are "derived from or effectively connected with" his prior employment in Massachusetts. But because Oliver did not himself carry on any business activities in Massachusetts during 1991 to 1995, pension plan payments Oliver received during those years could not be taxed, the board held, and the taxpayers were entitled to the abatement for which they had applied. The commissioner responds that, to constitute taxable gross income, G. L. c. 62, § 5A (*a*) (1), requires only that the taxpayer's pension payments be "derived from" or "effectively connected with" his employment in Massachusetts, and contains no requirement that the taxpayer himself must have carried on any trade or business in Massachusetts during the taxable years at issue. We agree with the board.

We adhere to the familiar principle that tax statutes are to be

[5]The commissioner does not argue that the taxpayer's pension is taxable either as resulting from "participation in any lottery or wagering transaction within the commonwealth," or from "the ownership of any interest in real or tangible personal property located in the commonwealth." G. L. c. 62, §§ 5A (*a*) (2), (3).

strictly construed; we will not read into a statute an authority to tax that it does not plainly confer. See *Cabot* v. *Commissioner of Corps. & Taxation*, 267 Mass. 338, 340 (1929); *City Nat'l Bank* v. *Charles Baker Co.*, 180 Mass. 40, 41 (1901) (rejecting "the vanity of the suggestion that a tax may be sustained as within the spirit of a statute, if it is not covered by the words"). Any ambiguity is resolved in the taxpayer's favor. *Cabot* v. *Commissioner of Corps. & Taxation, supra.* See *McCarthy* v. *Commissioner of Revenue*, 391 Mass. 630, 633 (1984), quoting *Xtra, Inc.* v. *Commissioner of Revenue*, 380 Mass. 277, 281 (1980). General Laws c. 62, § 5A (*a*) (1), does not state explicitly whether a nonresident taxpayer may be taxed on pension payments received from a prior Massachusetts employer in years in which he has carried on no business in the Commonwealth. In light of the principles just stated, we must consider whether such authority is plainly implied.

By focusing exclusively on whether the income is "derived from" or "effectively connected with" Oliver's employment in Massachusetts, G. L. c. 62, § 5A (*a*), regardless of when the income was received, the commissioner ignores the over-all structure of that section. It contains three subsections, each of which defines a taxable "source[] within the commonwealth" from which gross income may be "derived" or with which it may be "effectively connected." The "derived from or effectively connected with" language becomes operative only after the antecedent determination whether the "source[]" of the income falls within one of the these subsections. Here, the proper inquiry, and the one we pursue, is the meaning of the first subsection, "any trade or business, including any employment carried on by the taxpayer in the commonwealth." See note 5, *supra.*

In *Commissioner of Revenue* v. *Dupee*, 423 Mass. 617 (1996), we construed this same subsection and considered whether a distribution of assets to a nonresident shareholder arising from the sale of shares in a Massachusetts Subchapter S corporation was taxable Massachusetts-source income under G. L. c. 62, § 5A (*a*) (1). The distribution occurred pursuant to a plan of liquidation of the corporation. The issue in that case was not, as here, the timing of the taxpayer's receipts but a claim by the

taxpayer that, because he did not himself participate in the regular operations of the corporation, he did he not "carry on" any trade or business in Massachusetts for purposes of determining his Massachusetts-source gross income. See *id.* at 618. We rejected the commissioner's argument that the statute required *only* that the distribution be "derived from" or "effectively connected with" a Massachusetts trade or business, as the distribution plainly was. Rather, we held that, to constitute Massachusetts income taxable to the taxpayer, the statute required that the nonresident taxpayer "personally conduct the Massachusetts business giving rise to the income." *Id.* at 620.

Consonantly with *Commissioner of Revenue v. Dupee, supra,* and the principles of interpretation on which it relied, the board has consistently construed G. L. c. 62, § 5A (*a*) (1), strictly against the taxing authority. See, e.g., *Gersh v. Commissioner of Revenue,* 22 Mass. App. Tax Bd. Rep. 49, 62 (1997) (nonresident taxpayer's income under noncompetition agreement related to sale of Massachusetts corporations not taxable in years when taxpayer no longer acted as officer and director of corporations); *Gaston v. Commissioner of Revenue,* 21 Mass. App. Tax Bd. Rep. 103, 113-114 (1997) (nonresident shareholder's sale of shares in Massachusetts Subchapter S corporation not taxable because taxpayer himself did not personally conduct trade or business in Massachusetts); *Cohen v. Commissioner of Revenue,* 18 Mass. App. Tax Bd. Rep. 28, 36-37 (1995) (gains from nonresidents' sale of interest in Massachusetts partnerships not taxable because selling interest did not constitute conduct of trade or business in Commonwealth).

In this case, the board adopted, and the taxpayers urge us to adopt, a correspondingly narrow view of G. L. c. 62, § 5A (*a*) (1), with regard to the timing of pension plan payments to a nonresident taxpayer. In addition to their reliance on *Commissioner of Revenue v. Dupee, supra, Gersh v. Commissioner of Revenue, supra, Gaston v. Commissioner of Revenue, supra,* and *Cohen v. Commissioner of Revenue, supra,*[6] the taxpayers insist that *Commissioner of Revenue v. Destito,* 23 Mass. App.

---

[6]The taxpayers also rely on a decision of the board in which no written report was issued, Mills *vs.* Commissioner of Revenue, A.T.B. Docket No. F223949 (Oct. 21, 1997). The commissioner contends that the board's

Ct. 977 (1987) (rescript opinion[7]), is dispositive of the issue. There, a nonresident taxpayer received certain deferred compensation (accumulated sick and vacation pay) after he had ceased working in Massachusetts. The board held that the deferred compensation payments were not taxable gross income because the taxpayer did not perform any services in Massachusetts during the year at issue. The Appeals Court agreed, for two principal reasons. First, the Appeals Court pointed to the general structure of Massachusetts income tax, which contemplates treating each taxable year on a separate basis, and concluded that the Legislature had intended Massachusetts-source income to be determined on the same, annual basis. *Id.* at 977-978. Second, the Appeals Court relied on the settled principles that the authority to tax must be plainly conferred and that any ambiguity must be resolved in favor of the taxpayer. See *id.* at 978.

The commissioner urges us either to limit *Commissioner of Revenue* v. *Destito, supra,* to its particular facts, or to overrule it entirely. He points out that in that case the board could not determine whether the deferred compensation at issue (sick and vacation time that had accrued to the taxpayer) was for services that had actually been performed in Massachusetts. But the record in that case did establish that the taxpayer had in fact accrued sick and vacation time by working in the Commonwealth for at least part of the time. At least some of his income, therefore, resulted from prior employment within the Commonwealth for which the Appeals Court concluded no tax was due. Here, like the taxpayer in *Destito,* Oliver received income from his prior Massachusetts employment, but received the income only when he was no longer carrying on any business in the Commonwealth. The board was correct to apply *Commissioner of Revenue* v. *Destito, supra,* to this case.

---

unreported decisions have no precedential value. Compare *New England Power Serv. Co.* v. *Commissioner of Revenue,* 25 Mass. App. Tax Bd. Rep. 694, 701 (2000), with *CG Assocs., Inc.* v. *Commissioner of Revenue,* 15 Mass. App. Tax Bd. Rep. 28, 34 (1993). We need express no opinion on the matter, and do not rely on the Mills case in reaching our conclusion today.

[7]A rescript opinion is "a form generally reserved for settled doctrine." *Tilcon Mass., Inc.* v. *Commissioner of Revenue,* 30 Mass. App. Ct. 264, 266 (1991).

We decline the commissioner's invitation to overrule *Destito* because it accords with our own reading of G. L. c. 62, § 5A (*a*) (1). We see nothing in the language of the statute that explicitly permits taxation of nonresident income "derived from or effectively connected with" past Massachusetts employment where the taxpayer has not "carried on" any business in the Commonwealth during the taxable year of receipt. As the Appeals Court noted in *Destito*, Massachusetts income tax laws generally contemplate treating each taxable year on a separate basis. This is sufficient to raise an ambiguity as to whether pension payments received by a nonresident taxpayer should be taxed in years when he is no longer employed in Massachusetts, an ambiguity that we resolve in the taxpayers' favor. *McCarthy* v. *Commissioner of Revenue, supra* at 633.[8]

The commissioner asserts that such a conclusion "negates" his regulatory provision addressing deferred compensation, 830 Code Mass. Regs. § 62.5A.1 (3) (b) (2000). We disagree. In pertinent part, that regulation provides:

> "*Deferred Compensation.* Massachusetts gross income in the nature of deferred compensation and derived from or effectively connected with a trade or business including employment carried on in Massachusetts is Massachusetts source income. Deferred Compensation, for purposes of [830 Code Mass. Regs. § 62.5A.1,] means all compensation for services which is paid or made available to the taxpayer in any taxable year following the taxable year in which the services were performed . . . ."

830 Code Mass. Regs. § 62.5A.1 (3) (b). Title 830 Code Mass. Regs. § 62.5A.1 cannot be read more expansively than G. L. c. 62, § 5A (*a*) (1): a regulation that purports to tax an item that the statute itself does not tax is invalid. See, e.g., *Lowell Sun Publ. Co.* v. *Commissioner of Revenue*, 397 Mass. 650, 652,

---

[8]Our ruling is not, as the commissioner suggests, inconsistent with our decisions in *Commissioner of Revenue* v. *Chinchillo*, 417 Mass. 219 (1994), and *Horst* v. *Commissioner of Revenue*, 389 Mass. 177 (1983), which concerned the application of a statute governing the income from instalment sales, G. L. c. 62, § 63.

653-654, 656 (1986) (invalidating regulation that sought "to impose . . . taxes beyond the authorization of the statute").[9]

Stare decisis considerations also inform our decision not to overrule *Commissioner of Revenue* v. *Destito, supra.* Taxpayers must be able to rely on established rules in order to comply with their reporting and filing obligations.[10] The settled interpretation of a tax statute "ought not to be lightly disturbed. Stability of interpretation is signally desirable in [such] matters . . . ." *Welch* v. *Boston*, 211 Mass. 178, 185 (1912).

*Decision of the Appellate Tax Board affirmed.*

---

[9]The commissioner also points to various provisions of the I.R.C. that, he argues, support his position. The Federal provisions relied on are not analogous to G. L. c. 62, § 5A (*a*), and do not influence our reading of the statute.

[10]"When a principle of taxation requires reexamination, Congress is better equipped than a court to define precisely the type of conduct which results in tax consequences. When courts readily undertake such tasks, taxpayers may not rely with assurance on what appear to be established rules lest they be subsequently overturned. Legislative enactments, on the other hand, although not always free from ambiguity, at least afford the taxpayers advance warning." *United States* v. *Byrum*, 408 U.S. 125, 135 (1972).