NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-388                                          Appeals Court

ROBERT M. DiCARLO & another[1]  vs.  SUFFOLK CONSTRUCTION CO.,
INC., & others.[2]

No. 13-P-388.

Suffolk.     December 10, 2013. - November 6, 2014.

Present:  Berry, Meade, & Agnes, JJ.

Workers' Compensation Act, Action against third person,
     Settlement agreement, Insurer.  Lien.

Civil action commenced in the Superior Court Department on
March 29, 2007.

A petition for settlement was heard by Frances A. McIntyre,
J.

A proceeding for interlocutory review was heard in the
Appeals Court by Carhart, J.

Alice J. Klein for the plaintiffs.
Wystan M. Ackerman for Twin City Fire Insurance Company.
Marie Cheung-Truslow, for National Association of
Subrogation Professionals, amicus curiae, submitted a brief.

---

[1] Deborah DiCarlo.

[2] Walter Brook Crossing, LLC, is also a defendant.
Professional Electrical Contractors of Connecticut, Inc., is a
third-party defendant.  Twin City Fire Insurance Company is an
interested party and the appellee.

BERRY, J.  This appeal involves a workers' compensation insurer's lien under G. L. c. 152, § 15, and poses the question whether, in cases where an injured employee receives workers' compensation benefits and then sues and successfully negotiates the allocation of noneconomic damages to the employee in a lawsuit against a third-party tortfeasor, the § 15 lien attaches to the noneconomic damage recovery, such as for pain and suffering.  We conclude that this interlocutory appeal[3] from an order denying the plaintiff's amended petition for settlement is controlled by this court's previous decision in <u>Curry</u> v. <u>Great Am. Ins. Co</u>., 80 Mass. App. Ct. 592 (2011) (<u>Curry</u>).[4]  <u>Curry</u> held that an insurer's lien under G. L. c. 152, § 15, did not reach the settlement proceeds of an employee's third-party action that were allocated to the worker for his pain and suffering and to his spouse for loss of consortium.  The fact that <u>Curry</u> was a wrongful death action brought by the estate of a deceased worker, and that this case is a tort action brought by an injured worker, does not, we believe, provide a meaningful basis

---

[3] Leave to file an interlocutory appeal was granted by a single justice of this court.

[4] The Supreme Judicial Court denied further appellate review in <u>Curry</u>.  See 461 Mass. 1103 (2011).

on which to distinguish Curry, and not apply its rationale.[5]  As the Curry court pointed out, a deceased worker's legal representative "stands in the shoes of the deceased" worker for purposes of § 15.  Curry, supra at 595 & 597 n.7.

We begin by noting that the holding in Curry has been followed by the Department of Industrial Accidents.  See Circular Letter No. 341, issued by the department on April 12, 2012, which states, in pertinent part:

> "The department is presently revising its § 15 interactive calculator [for allocations under G. L. c. 152, § 15] and petition in light of the Curry decision.
>
> "Henceforth § 15 petitions submitted to the industrial accident board for approval should specify the amount allocated to compensate the employee for her/his conscious pain and suffering, as well as any amount(s) recoverable in damages for the loss of consortium claims of family members.  Amounts so allocated are beyond the reach of the workers' compensation insurer's lien, and therefore are not subject to offset against the employee's entitlement to c. 152 benefits."

See Nason, Koziol, and Wall, Workers' Compensation § 27.12 at 100 & n.9.50 (Supp. 2014) ("The Massachusetts Appeals Court has clearly settled this debate, holding [in Curry] that the double recovery [prohibition] is limited to compensation payments; therefore, the insurer cannot receive reimbursement from that portion of the third party recovery attributable to payment for the employee's conscious pain and suffering.")  The settled

---

[5] In denying the amended petition, the judge relied on the distinction that Curry was a wrongful death case, a distinction that we reject.

interpretation of a statute "ought not to be lightly disturbed. Stability of interpretation is signally desirable in [such] matters." Commissioner of Rev. v. Oliver, 436 Mass. 467, 475 (2002), quoting from Welch v. Boston, 211 Mass. 178, 185 (1912).[6]

As further addressed herein, Curry is in accord with Eisner v. Hertz Corp., 381 Mass. 127, 133 (1980) (holding that a § 15 lien did not apply because that section does not "require reimbursement for an injury not compensable under c. 152"); Hultin v. Francis Harvey & Sons, Inc., 40 Mass. App. Ct. 692, 695 (1996) (a claim for loss of consortium is "entirely independent and distinct from the personal injury claims of the employee," which would be subject to a § 15 lien); and Wilson's Case, 67 Mass. App. Ct. 1, 7-8 (2006) (§ 15 does not apply to settlement payments based on loss of consortium claim).

Accordingly, we vacate the order denying the amended petition for settlement and remand the case to the Superior Court for entry of an order consistent with this opinion.[7]

---

[6] We note that the Legislature is "presumed to be aware of the manner in which its statutes have been interpreted." Boyle v. Weiss, 461 Mass. 519, 524 (2012), quoting from Commonwealth v. Wynton W., 459 Mass. 745, 751 (2011). Our research into legislative activity post-Curry indicates that no bills were filed to amend G. L. c. 152, § 15, in response to this court's holding in Curry regarding allocations for independent noneconomic-based causes of actions, such as for pain and suffering.

[7] We acknowledge the amicus brief submitted by the National Association of Subrogation Professionals.

1. <u>Background</u>. The essential facts are not in dispute. On October 11, 2004, Robert M. DiCarlo (DiCarlo) suffered serious personal injuries as a result of an accident while working as an electrician at a construction site. He was out of work for two and one-half years and collected workers' compensation benefits for his medical expenses ($48,431.16) and lost wages ($233,387.95) from his employer's insurer, Twin City Fire Insurance Company (insurer). In March, 2007, pursuant to G. L. c. 152, § 15, DiCarlo filed a third-party lawsuit against the general contractor and owner of the property where the injury occurred (Suffolk Construction, Inc., and Walker Brook Crossing, LLC). DiCarlo amended his complaint, without opposition, to add a loss of consortium claim on behalf of his wife, Deborah. The parties participated in mediation and settled DiCarlo's lawsuit for $100,000, which was to be paid by the insurer of the defendants and third-party defendant.[8]

The Superior Court judge conducted an evidentiary hearing on DiCarlo's amended petition for settlement and allowed counsel for the parties to inquire of both DiCarlo and his wife. DiCarlo also submitted certified copies of his medical records. G. L. c. 233, § 79G. The judge made detailed findings of fact

---

[8] Pursuant to court order, this agreed-upon settlement amount was placed in a trust account. As a consequence, the defendants and third-party defendant were relieved of the necessity of any involvement in this appeal.

in which she found DiCarlo and his wife "to be credible in every particular."[9] The judge found that the evidence supported DiCarlo's proposed thirty-five percent allocation of the settlement funds as compensation for his pain and suffering and thirty-five percent allocation as compensation for his wife's claim for loss of consortium.[10] However, the judge went on to conclude that the proposed allocation to DiCarlo of thirty-five percent of the settlement proceeds for pain and suffering was

---

[9] The judge found that DiCarlo's pain was "relentless" and "[o]n a scale of one to ten, he placed his pain level at plus ten all the time. He could not work. He became moody and irritable   . . . . He required considerable pain medication which made him somewhat incoherent. Sexual intimacy became impossible [and] the injury harmed the marriage." The judge also found that DiCarlo "had a herniated L2-3 disc with L2 nerve root compression; he required considerable pain management. This court credits the complaints by [DiCarlo] of constant pain and interference with quality of life that are consistent with and corroborated by the medical record. Moreover, each member of this couple suffered near-equally as a result of [DiCarlo's] injury."

[10] DiCarlo's settlement proposal requested that approximately thirty-five percent of the settlement be awarded to him for his pain and suffering, approximately thirty-five percent be awarded to his wife for her loss of consortium, and approximately thirty percent to the insurer to satisfy its lien, with each portion again assigned a pro rata share of the attorney's fees and costs. The insurer proposed that it should receive no less than ninety percent of the settlement and that no more than ten percent be awarded to DiCarlo's wife if the court found her claim for loss of consortium supported by the evidence.

subject to the insurer's lien under G. L. c. 152, § 15.[11]
Approval of the proposed settlement was consequently denied.

2. Discussion.  On appeal, DiCarlo contends that this case
is controlled by Curry.  We agree.  As previously referenced, in
Curry this court held that damages for conscious pain and
suffering recovered by the estate of a deceased worker, and
damages for loss of consortium recovered by the decedent's
family members in a third-party action, were not reimbursable to
the insurer under G. L. c. 152, § 15, because conscious pain and
suffering and loss of consortium are not compensable injuries
under G. L. c. 152.  Curry, supra at 594-595.  Accordingly, an
insurer's lien under G. L. c. 152, § 15, did not reach a claim
for loss of consortium recovered in a third-party action because
such claims were "entirely independent and distinct from the
personal injury claims of the employee."  Id. at 595, quoting
from Hultin v. Francis Harvey & Sons, Inc., 40 Mass. App. Ct. at
695.  The Curry court made it clear that it was the distinction
between the types of damages an injured employee can recover
under G. L. c. 152 (lost wages and medical expenses) compared to
what can be recovered in a tort action (loss of earning
capacity, medical expenses, and pain and suffering) that was

_____

[11] The judge also ruled that an allocation of thirty-five
percent of the settlement proceeds resulting from the third-
party action to the wife for her consortium claim was not
subject to the insurer's lien under G. L. c. 152, § 15.  This
aspect of the judge's decision has not been not challenged.

determinative of the scope of an insurer's lien under G. L. c.
152, § 15.  See Curry, supra at 596-597 & n.7.  The Curry
decision relies on the following precedent, which is summarized
in the decision as follows:

> "In Eisner v. Hertz Corp., supra at 129, the Supreme
> Judicial Court was charged with answering the following
> certified question from the United States Court of Appeals
> for the First Circuit:  'Whether a workmen's compensation
> insurer is entitled to reimbursement under [§ 15] of the
> portion of the net proceeds of a third party settlement for
> the loss of consortium of the widow.'  The court answered
> in the negative, observing that '[s]ection 15 does not
> require reimbursement for an injury not compensable under
> c. 152.  The wife received no separate compensation
> payments for loss of consortium.  Nowhere does c. 152
> suggest that loss of consortium is a compensable injury.'
> Id. at 133-134.  See Hultin v. Francis Harvey & Sons, Inc.,
> supra at 695 ('claims of the spouse of an injured employee
> for loss of consortium . . . are entirely independent and
> distinct from the personal injury claims of the employee');
> Wilson's Case, 67 Mass. App. Ct. 1, 7-8 (2006) (settlement
> payments based on claimant's loss of consortium claim 'are
> related to the claimant's own independent loss stemming
> from the workplace incident.  As such, the settlement
> payments are not subject to a lien by the employer, and
> G. L. c. 152, § 15, which is designed to guard against
> double recovery by an employee or dependent, does not
> apply')."

Curry, supra at 595-596.

The holding in Curry is consonant with the statutory
purposes underlying the workers' compensation laws in G. L.
c. 152, which is to protect workers.  This principle has been
consistently reaffirmed by the Supreme Judicial Court:

> "It has long been recognized that the Act 'was enacted as a
> "humanitarian measure" in response to strong public
> sentiment that the remedies afforded by actions of tort at
> common law did not provide adequate protection to workers.'

It is designed to provide financial compensation for the impairment of an injured worker's earning capacity. The Act is 'a remedial statute and should be given a broad interpretation, viewed in light of its purpose and to "promote the accomplishment of its beneficent design.'" Further, it must be analyzed 'as a whole . . . so that the various portions taken together shall constitute a harmonious and consistent legislative enactment.'"

Spaniol's Case, 466 Mass. 102, 106-107 (2013) (citations omitted).

Thus, we follow Curry as the binding precedent of this court and hold in this case that DiCarlo's compensation for pain and suffering was not subject to the G. L. c. 152, § 15, insurer's lien.

The order denying the amended petition for settlement is reversed, and a new order shall enter consistent with this opinion.

So ordered.

AGNES, J. (concurring in the result).  I agree with the majority's decision to rely on Curry v. Great Am. Ins. Co., 80 Mass. App. Ct. 592 (2011) (Curry), and to hold that the workers' compensation insurer's lien under G. L. c. 152, § 15, does not reach the damages for pain and suffering recovered by the injured worker in a third-party action.  However, my concurrence is based solely on the doctrine of stare decisis.  In my view, a panel of this court should follow a recently published decision of the court on a question of statutory interpretation in the absence of any intervening action by the Legislature or a decision by the Supreme Judicial Court that overrules or calls into question the prior Appeals Court opinion.  I write separately because, based on earlier decisions by the Supreme Judicial Court, I have reservations whether Curry was decided correctly.  Because this case involves an issue of considerable importance to the administration of justice, an outline of the reasons why a different outcome in this case should be reached may assist the Supreme Judicial Court or the Legislature.

Discussion.  1. Statutory framework.  The appropriate starting point is the statute, bearing in mind that when the words are plain and unambiguous, our sole function is to enforce the law as written.  See Commonwealth v. Boe, 456 Mass. 337, 347 (2010).

General Laws, c. 152, § 15, as appearing in St. 1991, c. 398, § 39, provides in pertinent part as follows:

"Where the injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof, the employee shall be entitled, without election, to the compensation and other benefits provided under this chapter. Either the employee or insurer may proceed to enforce the liability of such person, but the insurer may not do so unless compensation has been paid in accordance with sections seven, eight, ten A, eleven C, twelve or nineteen nor until seven months following the date of such injury. The sum recovered shall be for the benefit of the insurer, unless such sum is greater than that paid by it to the employee, in which event the excess shall be retained by or paid to the employee. For the purposes of this section, 'excess' shall mean the amount by which the gross sum received in payment for the injury exceeds the compensation paid under this chapter." (Emphasis added.)

The language "[t]he sum recovered shall be for the benefit of the insurer," is not otherwise qualified or limited in § 15 or elsewhere in G. L. c. 152. This language has been part of our workers' compensation law since it was enacted in 1911. Rhode v. Beacon Sales Co., 416 Mass. 14, 17 (1993) (Rhode). The phrase "the sum recovered" does not differentiate between the types of damages that may be recovered by or on behalf of an employee in a third-party action. In Rhode, the court observed that the language was designed to establish "an insurer's right to full reimbursement of benefits." Ibid.

It is also instructive to examine the cases prior to Curry which have interpreted § 15, but which are not considered and

distinguished in Curry.  In Rhode, an employee obtained a recovery from the tortfeasor in excess of the workers' compensation benefits he had received.  He argued that because "he was recovering only a fraction of the value of his injuries," id. at 16, from the tortfeasor, the workers' compensation insurer was not entitled to the full amount of the lien.  He claimed that the Superior Court judge could make an equitable allocation between the employee and the insurer in approving a settlement under § 15 based on the most recent amendment to the statute.[1]  Id. at 15-16.  The court rejected this argument and held that "a judge has no discretionary power to review and to determine the fair allocation of proceeds between an insurer and the insured."  Id. at 18-19.  Instead,

---

[1] Statutes 1991, c. 398, § 39, added the following language to G. L. c. 152, § 15:  "At such hearing the court shall inquire and make a finding as to the taking of evidence on the merits of the settlement, on the fair allocation of amounts payable to the employee and the employee's spouse, children, parents and any other member of the employee's family or next of kin who may have claims arising from the injury for which are payable, under this chapter in which the action has been commenced after an opportunity has been afforded both the insurer and the employee to be heard on the merits of the settlement and on the amount, if any, to which the insurer is entitled out of such settlement by way of reimbursement, and on the amount of excess that shall be subject to offset against any future payment of benefits under this chapter by the insurer, which amount shall be determined at the time of such approval.  In determining the amount of 'excess' that shall be subject to offset against any future compensation payment the board, the reviewing board, or the court in which the action has been commenced shall consider the fair allocation of amounts payable to and amongst family members who may have claims arising from the injury for which said compensation is payable."

the Supreme Judicial Court explained that the only allocation that § 15 allows is between the employee and his family members. Except for that allocation, "[u]ntil an 'excess' recovery exists, the entire recovery is for the insurer."  Id. at 19 (emphasis added).  The court observed that "this court has consistently recognized an insurer's right to full reimbursement of benefits," and that the 1991 amendment "did not in any way alter this language." Id. at 17.  See Dufresne's Case, 51 Mass. App. Ct. 81, 85-86 (2001) (noting that "the purposes of the offset are first to preclude double recovery by the employee . . . and, second, to maintain the policy of reimbursement for the compensation insurer").[2]  Contrast G. L. c. 152, § 46A (as to liens held by health insurers and medical providers, the Department of Industrial Accidents may compromise their claims

---

[2] Curry appears to premised on the notion that the goal of preventing an injured employee from receiving a double recovery in a third-party action under § 15 is maintained by shielding the employee's recovery for pain and suffering from the reach of the lien because a recovery for pain and suffering is not permitted in an action under G. L. c. 152.  See Curry, supra at 595.  However, the bar against permitting double recovery is defined more broadly to mean that "an employee should not recover both workmen's compensation benefits and damages at law for the same injury." Eisner v. Hertz Corp., 381 Mass. 127, 131 (1980), quoting from McDonald v. Employers' Liab. Assur. Corp., 288 Mass. 170, 174 (1934).  When an injured employee receives compensation under G. L. c. 152 and then brings a third-party action, whether the recovery segregates the award of damages for loss of earning capacity, medical expenses, and pain and suffering or not, there are two recoveries for the same injury.  Under § 15, it is only when the recovery in the tort action is "in excess" of the compensation paid by the insurer under G. L. c. 152 that it is received by the employee.

to the proceeds of a third-party action and assign priority to the recovery by the injured employee).

The interpretation of § 15 set forth in Rhode was followed in Lane v. Plymouth Restaurant Group, 440 Mass. 469 (2003) (Lane), where the Supreme Judicial Court stressed that reimbursement of the insurer was a primary goal of § 15 and held that at the hearing to approve a settlement of a third-party tort action in which a workers' compensation insurer has a lien, a judge must allow the workers' compensation insurer to present evidence regarding the fair allocation of settlement proceeds among the insurance beneficiaries.  See id. at 472-473.[3]

Consideration of Bongiorno v. Liberty Mut. Ins. Co., 417 Mass. 396 (1994) (Bongiorno), raises additional concern about the reasoning in Curry.  In Bongiorno, the issue was whether a workers' compensation insurer was entitled to a lien on a settlement obtained in a legal malpractice action, where the employee had sued his lawyers for malpractice after they had failed to timely serve a complaint against a third-party tortfeasor who was allegedly responsible for the employee's

---

[3] In Lane, the dispute was over the allocation of the proceeds of a third-party action in which the judge approved a settlement in the amount of $237,500, by allocating only ten percent toward the decedent's personal injury, and thus recoverable by the insurer, with the remainder allocated to cover claims for loss of consortium and negligent infliction of emotional distress on the part of the decedent's surviving spouse and four sons.

workplace injury.  Id. at 397-399.  The employee maintained that the § 15 lien did not apply to the settlement proceeds resulting from the malpractice lawsuit because otherwise the injured employee would not be made whole.  Id. at 402.  The Supreme Judicial Court rejected this argument and concluded that the purpose of § 15 is not to ensure that plaintiffs are fully compensated, but rather to provide workers' compensation insurers with the first priority in the allocation of third-party recoveries:

> "In enacting G. L. c. 152, the Legislature chose to favor certainty and relative administrative convenience over the opportunity for an injured party to obtain full redress in court.  It may indeed be the case, as the plaintiffs argue, that they have not been fully compensated even by the total of the benefits received under G. L. c. 152 and the settlement with the [lawyers].  Nevertheless, we think that the intent and purpose of G. L. c. 152 are better served by treating the malpractice recovery as a third-party recovery subject to Liberty Mutual's lien under § 15.  The malpractice recovery serves to compensate indirectly for the same injuries that the workers' compensation benefits paid by Liberty Mutual compensated directly.  To enforce the legislative intent of reimbursing workers' compensation insurers before awarding full tort damages to an injured worker, the malpractice recovery should be subject to Liberty Mutual's claim."

Id. at 402.[4]

_____

[4] Additional cases decided by the Supreme Judicial Court and cited by the insurer make the same point.  See, e.g., Meehan's Case, 316 Mass. 522, 523 (1944) (under § 15, insurer "was entitled to reimburse itself for compensation paid to the employee out of any amount that it might recover" from a tortfeasor); Richard v. Arsenault, 349 Mass. 521, 524 (1965) (under § 15, "any damages awarded as a result of the third party action must first be applied to reimburse the insurer for the

The reasoning in <u>Curry</u> is also problematic in light of the Legislature's use of the word "injury" in that portion of the statute quoted above in the text. The word "injury" in § 15 and throughout G. L. c. 152 as a whole appears to refer to the personal injury sustained by the employee as a result of the work-related accident. Section 15 begins with the phrase "the injury for which compensation is payable," using the term "injury," I believe, to refer to the personal injury, and the term "compensation" to refer to the wage benefits and medical expenses payable under G. L. c. 152. Section 18, which pertains to independent contractors and subcontractors, further explains that workers' compensation benefits and medical expenses are not the "injury" but rather are paid "on account of any injury to the employee." G. L. c. 152, § 18. Additional sections of G. L. c. 152 use the term "injury" in a manner that suggests it refers to the personal injury suffered by the employee and not

---

compensation paid"); <u>Boardman's Case</u>, 365 Mass. 185, 193 (1974) (under § 15, "it is only from the balance of the [settlement] proceeds, after insurer's reimbursement including reimbursement of medical costs, that the employee secures any recovery"); <u>Pina</u> v. <u>Liberty Mut. Ins. Co.</u>, 388 Mass. 1001, 1002 (1983) ("§ 15 obligates [the employee] to pay over to the [workers' compensation] insurance carrier, from the judgment, the benefits paid" by the insurer).

the category of damages awarded on account of an injury resulting from the tortious conduct of a third party.[5]

Legislative recognition of an insurer's right to be made whole for amounts it has paid to an injured employee in workers' compensation benefits before the employee retains any portion of an award of damages or settlement in a third-party action is grounded in equitable considerations. By electing to receive workers' compensation benefits, an injured employee is relieved of the need to bring a lawsuit, to prove negligence, and to risk suffering the consequences of comparative negligence and a reduction or loss of the right to recover any damages which may result if a tort action was brought instead of a claim for benefits under G. L. c. 152. See Richard v. Arsenault, 349 Mass. 521, 524 (1965).[6] Although there is an equitable argument

---

[5] See G. L. c. 152, § 1 (referring repeatedly to a specific "date of injury"); § 1(7A) (defining "personal injury"); § 7 (referring to a "first report of injury" and "benefits for the alleged injury"); § 12(1) (providing for proceedings in "the county in which the injury occurred"); § 16 (referring to whether employee's "incapacity or death is or was the result of the injury for which he received compensation"); § 23 (referring to releases of claims "arising from the injury"). See also McHoul, petitioner, 445 Mass. 143, 154 (2005), cert denied, 547 U.S. 1114 (2006) ("The term 'injury' has not been defined in the statute, but the word is hardly opaque. Webster's Third New Int'l Dictionary 1164 (1993) defines 'injury' in its most common sense to mean 'an act that damages, harms, or hurts: an unjust or undeserved infliction of suffering or harm: wrong.'").

[6] In Richard v. Arsenault, supra, the Supreme Judicial Court explained that § 15's bar against an employee's double recovery is another way of providing that the insurer is entitled to

to be made on behalf of the employee, namely, that pain and suffering damages recovered in a third-party action provide relief that is not available under G. L. c. 152, prior to Curry this view did not animate the discussion in the cases interpreting § 15. Instead, the Supreme Judicial Court has written that the goal of § 15 is to provide workers' compensation insurers with first priority in the allocation of third-party recoveries. Bongiorno, supra.

Another problem with the reasoning in Curry is that it requires that the phrase "the sum recovered," as it appears in § 15, to refer not to the entire amount recovered in the third-party action, nor to the "gross sum received in payment for the injury," as the statute provides, but instead to some lesser amount of that "gross sum" consisting exclusively of damages awarded for lost wages and medical expenses. This requires a

---

satisfy its lien for compensation benefits paid out of the proceeds of a third-party action before the employee is entitled to anything. "The 'claimant should not be allowed to keep the entire amount both of his compensation award and of his common-law damage recovery. The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay, and give the employee the excess. This is fair to everyone concerned: the employer, who, in a fault sense, is neutral, comes out even; the third person pays exactly the damages he would normally pay, which is correct, since to reduce his burden because of the relation between the employer and employee would be a simple windfall to him which he has done nothing to deserve; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone.' Larson, Workmen's Compensation Law, § 71.20. This principle is implicit in § 15." Id. at 524.

strained reading of the statute's text.  It is based on speculation about a distinction that the Legislature could have made between economic and noneconomic damages, but that does not appear in the statute. See Saab v. Massachusetts CVS Pharmacy, LLC, 452 Mass. 564, 572 (2008) ("[I]t is not the role of courts to create a more comprehensive or logical system of compensation. . . .  That is a task for the Legislature").  In order to read such a distinction into the law we would have to disregard the Legislature's specific direction to courts about how to read statutes, see G. L. c. 4, § 6, Third,[7] as well as our own canons of construction.  "[T]he statutory language itself is the principal source of insight into the legislative purpose." Hoffman v. Howmedica, Inc., 373 Mass. 32, 37 (1977).

While the law in other States relating to the scope of the insurer's lien is not a certain guide, it is noteworthy that a majority of courts in other jurisdictions with statutes comparable to § 15 include damages for pain and suffering recovered in a third-party action within the scope of the insurer's lien.  See 6 Larson's Workers Compensation Law § 117.01[1] and accompanying digest (2014 ed.) (collecting

---

[7] General Laws c. 4, § 6, Third, provides that "[w]ords and phrases shall be construed according to the common and approved usage of the language . . . ."  See Burke v. Chief of Police of Newton, 374 Mass. 450, 452 (1978) (words in a statute should be given their ordinary meaning unless there is a clear indication to the contrary).

cases). See also Wickert, Workers' Compensation Subrogation in all 50 States § 3.4 (5th ed. 2012); and 1 Modern Workers Compensation 103:57 (Clark Boardman Callaghan 2014).