NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12346

DENTAL SERVICE OF MASSACHUSETTS, INC.  vs.
COMMISSIONER OF REVENUE.


Suffolk.     December 5, 2017. - April 13, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, & Cypher, JJ.


Taxation, Abatement, Insurance company, Excise.  Practice,
     Civil, Abatement.  Insurance, Health and accident, Group,
     Coverage.  Statute, Construction.  Words, "Covered
     persons."



Appeal from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for
direct appellate review.


David C. Kravitz, Assistant State Solicitor, for
Commissioner of Revenue.
Daniel P. Ryan (David J. Nagle also present) for the
taxpayer.
James Roosevelt, Jr., & Rachel M. Wertheimer, for
Massachusetts Association of Health Plans, amicus curiae,
submitted a brief.

BUDD, J. The taxpayer, Dental Service of Massachusetts, Inc.,[1] is an insurer that provides dental coverage through preferred provider arrangements (PPAs).[2] Pursuant to G. L. c. 176I, § 11, insurers operating PPAs are obligated to pay annually an excise tax equal to a specified percentage "of the gross premiums received during the preceding calendar year for coverage of covered persons residing in this [C]ommonwealth" (emphasis added). The term "[c]overed person" is defined in the statute as "any policy holder or other person on whose behalf the organization is obligated to pay for or provide health care services." G. L. c. 176I, § 1.

---

[1] The taxpayer, Dental Service of Massachusetts, Inc., is an independent member of the Delta Dental Plans Association, an organization of thirty-nine independent dental companies that offers dental coverage throughout the United States.

[2] A preferred provider arrangement is a "form of health care delivery in which payers contract with a select group of [health care service providers] to provide care for enrollees through their health insurance or health benefits plans under conditions that give the payer some control over costs" (footnote omitted). E.S. Rolph, J.P. Rich, P.B. Ginsburg, S.D. Hosek, K.M. Keenan, & G.B. Gertler, State Laws and Regulations Governing Preferred Provider Organizations 1 (Aug. 1986). The term "[p]referred provider arrangement" is defined in G. L. c. 176I, the statute at issue in this case, but the definition does not provide guidance as to the substance of the term. See G. L. c. 176I, § 1 ("'Preferred provider arrangement,' a contract between or on behalf of an organization and a preferred provider which complies with all of the requirements of this chapter"). The statute defines "[p]referred provider" as a health care provider or group of providers "who have contracted to provide specified covered services." Id.

The taxpayer and the Commissioner of Revenue (commissioner) disagree regarding whether "covered persons" may sometimes refer to the employer-organizations that contract with insurers, or instead refers only to the individuals receiving health care services (in this case, dental care).[3] That is, when an employer purchases group insurance on behalf of its employees, does the insurer owe tax on premiums paid by or on behalf of only those individuals who live in Massachusetts, as the taxpayer contends, or does the insurer owe tax on all premiums received from the Massachusetts-based employer regardless of where its individual employees reside, as the commissioner contends. We agree with the Appellate Tax Board (board), and conclude that "covered persons" as used in G. L. c. 176I, § 11, refers solely to natural persons who, as employees, receive insurance coverage for health care services under a group insurance plan, rather than employer entities.[4]

---

[3] The record indicates that the taxpayer contracts with Massachusetts-based employers, unions, and other Massachusetts groups to provide dental insurance for, respectively, individual employees, union members, and other group members (and their respective family members). In this opinion, solely for ease of reference, we mention only contracting employers and their employees, but all that is stated applies equally to contracting unions or other groups and their members.

[4] We acknowledge the amicus brief submitted by the Massachusetts Association of Health Plans.

Background.  The statute governing PPAs, G. L. c. 176I, was enacted in 1988.  St. 1988, c. 23, § 65.  Chapter 176I includes an assessment provision that requires "[e]very organization . . . operating a [PPA] . . . annually [to] pay an assessment equal to [2.28] per cent of the gross premiums received during the preceding calendar year for coverage of covered persons residing in this [C]ommonwealth."  G. L. c. 176I, § 11 (a).

The taxpayer offers, through Massachusetts employers, dental insurance coverage to individual employees and members of their families using PPAs.  Although all of the employers with which the taxpayer contracted were headquartered in Massachusetts during the period in question, some employees did not reside in the Commonwealth.  The taxpayer paid the excise tax prescribed by G. L. c. 176I, § 11, on the total gross premiums received from Massachusetts employers in connection with its PPAs for the tax years 2006, 2007, and 2008.  Subsequently, based on its reading of § 11, between 2010 and 2012, the taxpayer filed applications with the commissioner requesting an abatement and refund for taxes it has paid for 2006 through 2008 on premiums received from those employers for coverage of employees who lived outside of the Commonwealth during those tax years.

The commissioner denied the applications, finding that the taxes were properly assessed; the taxpayer appealed.  The board ruled in favor of the taxpayer and granted abatements for the

three tax years in question, concluding that the term "covered persons" as used in G. L. c. 176I, § 11, refers to the employees receiving health care coverage rather than the employer-organization with which the taxpayer contracted. The commissioner appealed from the board's decision, and we allowed his application for direct appellate review.

Discussion. "Decisions of the board are reviewed for errors of law." Bridgewater State Univ. Found. v. Assessors of Bridgewater, 463 Mass. 154, 156 (2012). "[Q]uestions of statutory construction are questions of law, to be reviewed de novo." Id.

"[O]ur analysis begins with the statutory language, 'the principal source of insight into [l]egislative purpose.'" Associated Subcontractors of Mass., Inc. v. University of Mass. Bldg. Auth., 442 Mass. 159, 164 (2004), quoting Commonwealth v. Lightfoot, 391 Mass. 718, 720 (1984). Further, in interpreting § 11, "[w]e adhere to the familiar principle that tax statutes are to be strictly construed; we will not read into a statute an authority to tax that it does not plainly confer." Commissioner of Revenue v. Oliver, 436 Mass. 467, 470-471 (2002) (Oliver). "Any ambiguity is resolved in the taxpayer's favor." Id. at 471.

In considering the meaning of the term "covered persons" as used in the assessment provision, we look first to the

definition provided in the statute.  See Bulger v. Contributory Retirement Appeal Bd., 447 Mass. 651, 660 (2006), quoting Perez v. Bay State Ambulance & Hosp. Rental Serv., Inc., 413 Mass. 670, 675 (1992) ("[A] definition [that] declares what a term means . . . excludes any meaning that is not stated").  As mentioned supra, G. L. c. 176I, § 1, defines "[c]overed person" as "any policy holder or other person on whose behalf the organization is obligated to pay for or provide health care services."  As the commissioner points out, in the insurance industry, where an employer purchases a group health (or dental)[5] insurance plan on behalf of its employees, the employer is considered to be the policy holder.  See Foster v. Group Health Inc., 444 Mass. 668, 668 n.2 (2005).  The commissioner argues that because the definition in § 1 includes the term "policy holder" it should be read broadly to include both employer-organizations when they are policy holders as well as natural persons, depending on the context in which the term is being used.  However, the commissioner's interpretation disregards both the syntax and the context of the statute's definition of "covered person."  See Commonwealth v. Brooks, 366 Mass. 423,

---

[5] The statute defines "[h]ealth care services" as including "hospital, medical, surgical, dental, vision, and pharmaceutical services or products."  G. L. c. 178I, § 1.  Although this case involves dental insurance, we will refer generally to health care services throughout the rest of the opinion.

428 (1974) ("words in a statute must be considered in light of the other words surrounding them").[6]

The fact that "policy holder" is coupled with "or other person" implies that both categories are intended to be persons "on whose behalf the organization [i.e., the insurer] is obligated to pay for or provide health care services." The use of the word "other" to modify "person" would not otherwise be necessary or, for that matter, make sense. Phillips v. Equity Residential Mgt., L.L.C., 478 Mass. 251, 258 (2017), quoting Adamowicz v. Ipswich, 395 Mass. 757, 760 (1985) ("so long as it yields a 'logical and sensible result,' we do not interpret a statute so as to render any portion of it meaningless"). Thus, the words "policy holder" can be interpreted only as an individual, natural person, because a corporate or other organizational employer cannot be provided with health care services.[7]

---

[6] As for the argument of the Commissioner of Revenue (commissioner) that, in the group insurance context, it is the employer "on whose behalf the [insurer] is obligated to pay for . . . health care services," G. L. c. 176I, § 1, it is recipients of the "services rendered or products sold by a health care provider" that the insurer typically "pays for;" there is nothing to suggest that they are made on the employer's behalf.

[7] To bolster their arguments about the meaning of words "covered person," the parties refer to the differences between G. L. c. 176I and the Preferred Provider Arrangements Model Act (1987), drafted by the National Association of Insurance Commissioners (Model Act). The commissioner uses the fact that,

The commissioner asks us to interpret "covered persons residing in this [C]ommonwealth" in § 11 as applying to either employers or individuals, depending on who the "policy holder" is, pointing out that, in other statutes, employer-organizations as well as natural persons can be said to "reside" in a particular location. See, e.g., G. L. c. 4, § 13 (a) (newspaper subscribers); G. L. c. 59, § 18, Sixth & Seventh (partnerships); G. L. c. 110C, § 7 (stockholders); G. L. c. 110E, § 1 (e) (same); G. L. c. 110F, § 2 (e) (same). However, where the Legislature uses the word "reside" in reference to both natural persons and artificial entities, typically it includes additional terms describing how to apply the statute to the latter category. See, e.g., G. L. c. 149, § 6F½ (a) (action for injunction or restraining order brought in county in which "such person, firm, corporation, or other entity resides or has its principal place of business"); G. L. c. 203A, § 1 (requiring common trust fund to be administered in accordance with written instrument filed "in the county in which such individual,

in contrast to G. L. c. 176I, the definition of "covered person" in the Model Act refers only to an individual and not to a "policy holder" receiving health care services. See Model Act, supra at § 3B. Assuming that the Legislature relied on the Model Act, the argument that the Legislature added "policy holder" to the definition of "covered person" in order to expand the scope of taxable entities under § 11 is undermined by the use of the word "other" before "person" as discussed supra. See G. L. c. 176I, § 1.

corporation or association resides or has his or its principal place of business").  See also Mass. R. Civ. P. 4 (d), as amended, 370 Mass. 918 (1976) (describing service of process requirements with rules for individuals different from those for artificial entities).  Cf. 28 U.S.C. § 1391 (setting forth standards for Federal courts to establish residency for natural person different from those for artificial entities).  Here, the Legislature's choice of the word "residing" connotes the behavior of natural persons, not entities like employer-organizations.  See RJR Nabisco Holdings, Corps. v. Dunn, 657 N.E.2d 1220, 1223 (Ind. 1995) (noting that statute's use of word "reside" indicates natural person, not organization).

The use of the term "covered person" in other parts of the statute is consistent with this view.  See Casseus v. Eastern Bus Co., Inc., 478 Mass. 786, 795 (2018), quoting Leary v. Contributory Retirement Appeal Bd., 421 Mass. 344, 347 (1995) ("When the meaning of any particular section or clause of a statute is questioned, it is proper, no doubt, to look into the other parts of the statute:  otherwise the different sections of the same statute might be so construed as to be repugnant, and the intention of the [L]egislature might be defeated").  Throughout G. L. c. 176I, the term "covered person" appears in connection with an individual or natural person's health or the provision of health care services.  For example, the definition

of "[e]mergency care" refers to medical services provided to, and the health of, covered persons.[8]  General Laws c. 176I, § 2, requires organizations operating PPAs to submit a variety of information to the commissioner for approval, including "a description of the health services and any other benefits to which the covered person is entitled."  General Laws c. 176I, § 3 (b), refers to covered persons receiving emergency care and dialing 911.[9]  Obviously employer-organizations do not receive health care services or dial 911.  Therefore, the use of "covered person" in the above-referenced sections is consistent with meaning a natural person, and inconsistent with meaning an

---

[8] General Laws c. 176I, § 1, defines "[e]mergency care" as

"services provided in or by a hospital emergency facility to a covered person after the development of a medical condition, . . . manifesting itself by symptoms of sufficient severity that the absence of prompt medical attention could reasonably be expected . . . to result in placing the covered person's or another person's health in serious jeopardy, serious impairment to body function, or serious dysfunction of any body organ or part . . . ."

[9] Section 3 (b) provides, in relevant part:

"If a covered person receives emergency care and cannot reasonably reach a preferred provider, payment for care related to the emergency shall be made . . . as if the covered person had been treated by a preferred provider; whenever a covered person is confronted with a need for emergency care, . . . no covered person shall in any way be discouraged from using the . . . medical service system, [or] the 911 telephone number, . . . or be denied coverage for medical and transportation expenses incurred as a result of such use of emergency care."

employer-organization. <u>Manning</u> v. <u>Boston Redev. Auth</u>., 400 Mass. 444, 453 (1987) ("A statute . . . should not be construed in a way that produces absurd or unreasonable results when a sensible construction is readily available"). The term is not used anywhere in the statute in a manner suggesting that it must apply to entities other than natural persons.

It is true that use of the term throughout the chapter to refer to natural persons is not necessarily inconsistent with the commissioner's interpretation, that is, defining "covered persons" as either a policy holder entity that is not a natural person, or as a natural person, depending on the context used. Additionally, there are perhaps some strong policy reasons that favor the commissioner's interpretation.[10] However, consistent with the principles of statutory construction on which we rely in interpreting tax statutes, and which were respected by the board in this case, we construe the use of "covered persons" in § 11 "strictly against the taxing authority" if the statute is

---

[10] For example, it may be easier to administer the statute if insurers pay the assessment on the entire gross premiums received from contracts for group insurance with Massachusetts employers and other groups, rather than identifying the portion of those premiums attributable to individuals covered by the group insurance plan that actually reside in the Commonwealth. Additionally, the commissioner's interpretation is consistent with the policy of assessing insurers for the value of the franchise -- the benefit or value of being able to offer insurance in the Commonwealth.

ambiguous.  See Oliver, 436 Mass. at 472; Commissioner of Revenue v. Dupee, 423 Mass. 617, 622 (1996).

Furthermore, our interpretation is supported by the administration of G. L. c. 176I by the Division of Insurance (division).[11,12]  The division likewise treats "covered persons" as meaning natural individual persons in administering reporting requirements for health benefit plans, which include PPAs. General Laws c. 176I, § 7, requires insurers operating PPAs to "file annually with the [C]ommissioner [of Insurance] . . . a report covering its prior fiscal year."  "The report shall include . . . the number of covered persons under health benefit plans . . . , which include preferred provider arrangements."

---

[11] The Division of Insurance (division) is an agency tasked with the regulation of insurance products.  See generally, e.g., G. L. cc. 26, 175.  The division is responsible for the administration and enforcement of G. L. c. 176I, with the exception of § 11, which is administered by the Department of Revenue.  See G. L. c. 176I, §§ 8, 11.

[12] Even though § 11 is administered by the commissioner, because "covered person" is defined for use throughout the chapter in § 1, any deference due for an interpretation of that term would be to the division's interpretation because that agency administers the rest of the chapter.  See Goldberg v. Board of Health of Granby, 444 Mass. 627, 633 (2005), quoting Briggs v. Commonwealth, 429 Mass. 241, 253 (1999) (noting that, in interpreting regulations, our analysis requires substantial deference to expertise and statutory interpretation of agency charged with "primary responsibility" for administering statute).  Furthermore, the "specialized knowledge, technical competence, and experience" of the Commissioner of Insurance is more relevant than the Appellate Tax Board's in interpreting the disputed insurance term here.  Springfield v. Department of Telecomm. & Cable, 457 Mass. 562, 568 (2010).

Id.  See 211 Code Mass. Regs. § 51.06 (2016) (requiring PPA operator annual reports to include "summary of the number of [c]overed [p]ersons").  The division ensures compliance with the reporting requirement by requiring insurers to file "raw data on actual membership."  See Division of Insurance, 2015 Preferred Providers Information, http://www.mass.gov/ocabr/insurance /providers-and-producers/insurance-companies/group-products-and- plans/insured-preferred-provider-membership/2015-preferred- providers-information.html [https://perma.cc/M38K-58HL].  For the purposes of these reports "membership includes all subscribers and covered dependents of a subscriber . . . for whom the carrier has accepted the risk of financing necessary health services," not the number of employers who are group insurance policy holders.  Id.

For all of these reasons, we conclude that the term "covered persons" in § 11 refers to the natural person receiving health care coverage under a PPA policy, including his or her spouse and additional dependents, not the employer-organization with whom the insurer contracts.

Decision of the Appellate Tax
Board affirmed.